[Crim. No. 4719. In Bank. May 24, 1946.]

In re WILSON DE LA ROI, on Habeas Corpus and for a Writ of Error *Coram Nobis* and a Writ of Error *Coram Vobis.*

Harold C. Brown for Petitioner.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, John Quincy Brown, District Attorney (Sacramento), and Albert H. Mundt, Chief Deputy District Attorney, for Respondents.

SCHAUER, J.—In 1942 Wilson De La Roi, hereinafter sometimes referred to as the petitioner, was convicted of the charge that while undergoing a life sentence in a state prison, on July 15, 1942, he committed an assault with a deadly weapon (with deadly effect) and with malice aforethought upon one William Deal, a fellow convict. The judgment imposing the mandatory death penalty for such offense (Pen. Code, § 4500)

was affirmed. (*People* v. *De La Roi* (1944), 23 Cal.2d 692 [146 P.2d 225, 151 P.2d 837].) Subsequent to affirmance of the judgment, this court issued a writ of habeas corpus upon a petition in behalf of De La Roi which asserted that his conviction was obtained on perjured testimony offered by the state with knowledge that it was false. After the return to the writ was filed, Superior Court Judge A. L. Pierovich, appointed by us as referee, took evidence upon the factual issues, made findings adverse to petitioner, and concluded "that no witness who testified against Wilson De La Roi at the trial which resulted in the judgment of conviction . . . committed perjury . . . ; and that no witness testified to any material matter which he knew to be false. That there being no perjury committed at the time of the trial, no representative of the State of California caused or suffered any testimony to be introduced knowing that such testimony as given was perjured." This court, convinced that such findings and conclusion were fully supported by the evidence, discharged the writ of habeas corpus and remanded petitioner to custody. (*In re De La Roi* (1945), 27 Cal.2d 354 [164 P.2d 10].) The evidence adduced at the trial which resulted in the judgment of conviction, as well as that presented to the referee, is recounted and analyzed in considerable detail in our two opinions cited hereinabove and it is unnecessary to again narrate it at length.

De La Roi has now presented his "Petition for a Writ of Habeas Corpus and by Way of Appeal from the Writ of Error Coram Nobis Filed in Sacramento County, and in the Alternative for a Writ of Coram Vobis." At the oral argument counsel for De La Roi conceded in effect that no sufficient showing had been made to justify granting petitioner relief by way of habeas corpus, that the case was not a proper one for the issuance of a writ of error *coram vobis*, and that petitioner is actually now seeking a further hearing in the nature of *coram nobis* proceedings. However, it appears to be beyond serious debate, for reasons hereinafter depicted, that the petition, in the light of the showing thereon, is fatally insufficient to warrant either the writ *coram nobis* or the writ *coram vobis*, or to vest us with jurisdiction on appeal from the superior court proceeding, and, hence, that it can be considered, if it is not to be dismissed forthwith on the grounds above stated, only as an application for a writ of habeas corpus. Because of the gravity of the penalty adjudged against petitioner, and the possibly like gravity of the consequences to his former cell-

mate, Walker, which may follow the latter's recent "confession" (hereinafter referred to in more detail) of the crime for which petitioner stands convicted, and because, also, the state is ever solicitous that those whom it prosecutes shall be accorded full measure of every legal right, we do not at all rely upon the concession by petitioner's counsel, which was made in oral argument, under the stress of questioning from the bench, in conscientious performance of his duty to the court as well as to his client. Although we reach the result conceded, we do so only after consideration of the application at length on its merits, insofar as it can be construed to present issues cognizable by us.

So regarded, the petition then is, in substance, a second application to this court for a writ of habeas corpus upon the same legal ground previously advanced; i.e., that the petitioner is unlawfully committed and restrained in that the judgment of conviction upon which he stands committed was obtained through the use of perjured testimony knowingly procured and used by the state, thereby denying him due process of law. (*Mooney* v. *Holohan* (1935), 294 U.S. 103, 112 [55 S.Ct. 340, 341-342, 79 L.Ed. 791, 794, 98 A.L.R. 406, 409]; *In re Mooney* (1937), 10 Cal.2d 1, 14 [73 P.2d 554].) In the language of counsel for petitioner the claim is "here is a case where, in effect, there was no trial" and the petitioner, even though previously properly remanded to custody, should on this application be released from the judgment because the evidence is "of a conclusive nature that the defendant did not commit the crime."

More specifically, the petition alleges that on March 1, 1946, before a judge of the Superior Court in Sacramento County "a request was made by the petitioner for a hearing on a Writ of Error Coram Nobis; that defendant's petition on said March 1, 1946, was presented and argued. . . . That . . . defendant's petition for further proceedings was denied and said judgment was entered in the records of this action in said Superior Court. . . . That . . . [the] sentence of death . . . imposed by the Court aforesaid is illegal . . . and said illegality consists in this, to-wit: . . ." Then follows an assertion that De La Roi is innocent of the assault and killing of which he is convicted, and that one Eddie Walker, a fellow convict and prison inmate with De La Roi at the time of the killing (and presently a convict and prison inmate), "has confessed to be the sole assailant and killer . . . and has com-

pletely exonerated" De La Roi. Attached to the petition is a five-page document purporting to be Walker's confession of the crime and alleged to be in his handwriting and signed by him.

It is contended that the truth of the alleged confession is "conclusively," or at least convincingly, established both by the gravity of the consequences as to Walker. which may result from it and by certain testimony selected and quoted from that introduced at the referee's hearing on the previous habeas corpus proceeding, and that had the confession been introduced before the referee on the previous hearing "a different finding would have resulted." There is no showing (and in the nature of the situation there could be none) that petitioner has been surprised by the confession of Walker or by the asserted fact of Walker's guilt. According to the confession and the "corroborating" testimony adduced at the referee's hearing, De La Roi was present in the laundry room of the prison (the scene of the slaying), was within a few feet of Walker and Deal, and witnessed the deadly stabbing and cutting by Walker but did not himself wield the knife or touch Deal. The petition reiterates the charge made in the earlier habeas corpus proceeding "that false testimony was procured by state officials and a fraud was practiced on the trial court and on the defendant" and that "all of the evidence produced at the trial was that [De La Roi] . . . was the sole* assailant and killer, which is now admittedly in error." Again certain testimony adduced at the original trial and before the referee is quoted in support of these charges.

The petition concludes with a prayer that (1) a writ of habeas corpus issue or that a further reference be made to adjudge the truthfulness of Walker's confession, or (2) that a writ of error *coram vobis* issue, or (3) that this court order perfection of an appeal from the alleged judgment of the Superior Court in Sacramento County denying the writ of error *coram nobis* and for other proper and effective relief.

We are satisfied that petitioner has not established any

---

*Upon the face of the record the making of this contention by petitioner seems scarcely justifiable. See *People* v. *De La Roi* (1944), 23 Cal.2d 692, 699 [146 P.2d 225, 151 P.2d 837], noting that "the evidence for the prosecution tends to an appreciable extent to connect Walker with the defendant in the commission of the offense"; see also post, pages 272, 274. The record indubitably establishes that, if Walker is guilty of any criminal participation in the assault on Deal, whether as asserted in his "confession" or otherwise, it is petitioner above all others who until this time has sought to conceal the fact as to Walker's participation.

tenable ground for relief of any class by this court. ▮ In order to invoke the remedy of habeas corpus upon the theory that due process has been denied in that the conviction rests on perjured testimony ''it is incumbent upon petitioner in the proceeding . . . that he establish by a preponderance of substantial, credible evidence not only that perjured testimony was adduced upon his trial, but also, if such be the fact, that it was knowingly produced by the prosecuting officials. Proof of both elements, perjury and knowledge, by a preponderance of credible evidence, is indispensable under that decision.'' (*In re Mooney* (1937), *supra,* 10 Cal.2d 1, 15 [73 P.2d 554], referring to *Mooney* v. *Holohan* (1935), *supra,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed 791, 98 A.L.R. 406].) Upon the former habeas corpus proceeding herein petitioner failed to establish these essential facts, but he now contends that the result of such former proceeding must necessarily have been different if the confession had been available and considered. In other words this present petition is, in effect, an application for a new trial of the issues previously litigated—a new trial of those same issues upon largely the same evidence but with the addition of the confession.

It is asserted that the confession establishes beyond question that Walker is the guilty party, that De La Roi is innocent and, hence, that the testimonies of the witnesses for the prosecution at the trial to the effect that De La Roi was the killer, were indubitably perjured. It is pointed out that on the former habeas corpus proceeding the referee found ''that no witness who testified against Wilson De La Roi . . . committed perjury'' and ''That *there being no perjury committed* at the time of the trial, no representative of the State of California caused or suffered any testimony to be introduced knowing that such testimony as given was perjured.'' (Italics added.) Since the major finding—that no perjury was committed by state's witnesses—has, it is asserted, been overcome by the confession, the subsidiary and assertedly dependent finding that no perjured testimony was knowingly procured and introduced by the state, must also fall.

▮ One difficulty with petitioner's position is his assumption that the confession conclusively establishes De La Roi's innocence and overcomes the major finding. It does not necessarily do either, nor in view of the circumstances under which it was made, does it even conclusively establish Walker's guilt. It merely cumulates the contradictions in the evidence upon

which De La Roi was convicted and in that upon which the referee made his findings. The exculpatory weight to which it might otherwise be entitled is gravely impaired if not wholly destroyed by the following facts: 1. Walker was a defense witness at De La Roi's trial and, in testimony which to a remarkable degree paralleled that of De La Roi, he told a story which quite obviously had been devised and was calculated to protect both of them. The confession, conflicting with his previous testimony in almost every detail, was not made until December, 1945 (an oral confession to the district attorney; the written confession attached to the petition is dated January 5, 1946), although the trial took place in September, 1942, and the referee's hearing was held in September, 1944, with additional evidence taken in June, 1945. 2. The facts asserted in the confession, if they be facts, were necessarily known to both De La Roi and Walker at all times concerned. 3. At the trial a witness for the defendant (one Calvin Hanson) testified that Deal (the victim of the deadly assault) was killed by James Allen, a prosecution witness, yet neither De La Roi nor Walker then suggested that Allen was known by them to be innocent of the crime. 4. The asserted eye-witnesses Frank O'Neal and Norman Austin, upon whom petitioner now principally relies to corroborate the confession of Walker, must have been known to petitioner at the time of his trial but neither was then called as a witness although one of them had been subpoenaed and admittedly "coached" as to his then proposed testimony. 5. The witness James Morgan, relied upon by petitioner to impeach the testimony of Robert M. Trauger (sometimes referred to in the record as "Dutch" Trauger or William Trauger) given at the trial, testified, contrary to the confession, that at the time of the assault on Deal, Walker "was walking toward the back gate" and that petitioner was not in the laundry but was "standing in the handball court" or walking toward the back gate. 6. At the trial both De La Roi and Walker testified under oath that both were, at the time of the slaying, in the prison yard at the "back gate," about 435 feet—the most remote point in the main yard—from the laundry, while in the confession it is asserted that both were in the laundry room and that De La Roi witnessed the stabbing of Deal by Walker. It is perhaps worthy of mention that De La Roi, while asking us to believe in and rely upon Walker's confession, has at no time recanted his own first trial testimony. That testimony, hereinafter quoted in part, still

stands, contradicting Walker's confession. 7. Although asking us to believe, principally in reliance on Walker's confession and on the corroborating testimonies of Frank O'Neal and Norman Austin, that the state knowingly produced perjured testimony tending to place the guilt for the assault on petitioner and shielding Walker, there is no showing that petitioner himself, Walker, O'Neal or Austin at any time preceding or during the trial, or thereafter until shortly before the referee's supplemental hearing on June 25, 1945, informed any state officer or employe of the ''facts'' now asserted by them.

On June 25, 1945, O'Neal and Austin testified at the referee's hearing that on July 15, 1942, Walker was the wielder of the knife and the killer of Deal, and claimed that shortly before the date of the hearing, they had disclosed the ''facts'' to prison officials. Austin, however, admitted that only three months previously, on March 24, 1945, he had been questioned about the case by Mr. Albert H. Mundt, Chief Deputy District Attorney of Sacramento County, and that he then told Mr. Mundt that ''neither De La Roi nor Eddie Walker were at the laundry'' at the time of the assault on Deal.

It is a statutory rule for the appraisal of evidence that ''a witness false in one part of his testimony is to be distrusted in others.'' (Code Civ. Proc., § 2061(3).) The testimonies of Walker and of petitioner at the trial were necessarily false in nearly every detail if the confession of Walker is true. It is a reasonable deduction from all the evidence that not only were their testimonies at the trial false but so also is the Walker confession, at least insofar as it undertakes to completely absolve De La Roi from guilty participation in the crime. According to petitioner the confession is the most important and conclusive evidence which has been or can be adduced because, he asserts, it establishes Walker's guilt and, hence, his (De La Roi's) innocence. But De La Roi's innocence is not necessarily proven by Walker's guilt. (See Pen. Code, § 31; *People* v. *Harper* (1945), 25 Cal.2d 862, 870, 877 [156 P.2d 249].) The important fact of Walker's guilt, if it be a fact, was, according to the confession, at all times known to De La Roi yet he neither suggested that fact to the prison officials when he was interrogated, immediately after the assault, on July 15, 1942, nor to the judge or jury at the trial in September, 1942, nor in his testimony given at the hearing before the referee, in September, 1944, nor even up to this time has he, himself, averred that Walker is guilty of the crime.

Petitioner's showing is more convincing to the end that *he and Walker* have knowingly produced perjured testimony and perhaps suppressed truth as to Walker's guilty participation in the crime than that the state did so. In this connection it is interesting to note that in disposing of petitioner's appeal we found occasion to observe that "Eddie Walker . . . was defendant's cellmate at the time the offense was committed. His testimony, much more closely than that of any other witness, comports with that given by defendant. It is to be noted that *the evidence for the prosecution* tends to an appreciable extent *to connect Walker with the defendant in the commission of the offense charged.*" (Italics added.) (*People* v. *De La Roi* (1944), *supra*, 23 Cal.2d 692, 699.) Certainly the evidence falls far short of being convincing that the *state* wilfully and knowingly produced perjured testimony to shield Walker and pin guilt for his crime on petitioner.

The tendency of the confession is not at all to corroborate the testimony of De La Roi or of Walker at the trial; on the contrary it would brand their testimonies as false in nearly every detail. On its face it does not even purport to relate newly discovered facts; on the contrary all the "facts" asserted in the confession were, according to it, as previously mentioned, necessarily known to both De La Roi and Walker at all times concerned. And the testimony of petitioner himself, given at the trial, still stands unrecanted and in direct conflict with the Walker confession. If petitioner should be released from the judgment he attacks, and if Walker should be tried for the offense, De La Roi could reiterate his testimony given at the trial and could assert, apparently truthfully, that he, himself, had always adhered to that story. Likewise, the testimonies of Johnny De La Roi (brother of petitioner) and of James Morgan given at the trial in corroboration of the testimonies of petitioner and Walker as to their location at the time of the assault still stand unrecanted. (At the referee's hearing Morgan did place petitioner "in the handball court" instead of at the "back gate" but he placed neither petitioner nor Walker in the laundry, the scene of the slaying.)

It is not without significance that in his confession Walker asserts that "This thing started a long time ago when I was at San Quentin and knew Deal there. This was in 1937. I met De La Roi at San Quentin in 1939. . . . I was transferred to Folsom in December, 1941, and met Deal and De La Roi again. [Walker and De La Roi then became cell mates.] Deal was a homosexual [and so also, according to the petition, is Walker]

and he wanted me to move from De La Roi to go with him. In plain prison language Deal wanted me to marry him. This was the subject of many arguments between Deal and myself. The handball game was the blow-off. [The handball game immediately preceded the assault.] Deal had on previous occasions tried to force me to change my cell. He worked me over that is hit me on one occasion. Deal and De La Roi were good friends and got along swell. . . . In the morning of July 15th Deal again tried to get me to cell with him.'' In the light of the fact that Walker and De La Roi were cellmates and seemingly were then and are still devoted to one another to a chauvinistic degree, the asserted ''good friends'' relationship of De La Roi and Deal is difficult to reconcile with the deadly enmity of Walker and Deal.

In connection with the asserted relationship of petitioner, Walker, and Deal, and the conflicting implications of the confession, certain portions of the testimony of petitioner given at the trial are material here. Petitioner testified that about noon on the day of the assault on Deal, ''I was just standing there when Walker, Eddie Walker and Bill [Deal] came around and said, 'Well, let's line up' . . . for dinner time . . . we always lined up each noon time together. . . .

''Q. Did you ever cell with Bill Deal? A. I did . . . that has been sometime ago. . . . Bill Deal classed me as one of his best friends that he had in prison.

''Q. What was your feeling toward him? A. The same thing. . . .

''Q. What did you do after you learned he [Deal] had been cut, or hurt? A. Well, we just started walking and talking, and wondering who did it, Eddie and I, walking back and forth, wondering who did it,—I felt pretty bad about it, because Bill was a good friend of mine,—we couldn't figure out why it was done.''

Furthermore, petitioner testified: ''The Captain asked me [immediately after the stabbing of Deal] if I knew anything about the affair; I asked him, 'What are you talking about?' and he says,—he asked me, 'Is Bill Deal a friend of yours?' I says, 'Yes, one of the best friends I got in the place.' He says, 'Haven't you heard about the knife cutting affair out there?' I says, 'No, I don't know nothing about it.' . . . Captain Ryan told me, '*If you know anything about it, don't be afraid to tell me.' He says, 'I will give you all the protection in the world, you have nothing to fear.*' [Italics added.] I told him I know nothing about it. . . . [and further, after he left

Captain Ryan's office] They called us over,—the runner came after Walker and I and told us . . . said we was wanted over in the Captain's office. . . . They took us inside,—they took Eddie Walker on the farther part of the office,—there was a partition sort of there,—they left me in the front part. . . . We went to the Warden's office. . . . The Warden asked me what I knew about it; I says I didn't know nothing about it. . . . I have no idea at all [who actually did the stabbing]. . . . Bill Deal never owed me anything; and, I never owed him anything; anything we had we shared alike. . . . We were the best of friends.

"Q. Isn't it a fact this stabbing was occasioned over that friendship? A. No, sir; I would never think of doing anything like that to any person. . . .

"Q. Now isn't it a fact . . . just prior to the time Bill Deal was killed,—you told Eddie Walker to go in there and if he doesn't give it to you, to give it to him? A. No, sir.

"Q. And Walker went in and returned, isn't that correct? A. That is untrue, sir."

It is obvious from the above quoted excerpts from the transcript that petitioner was solicited both by prison officials immediately after the assault on Deal and by counsel during the trial to divulge any facts he knew about the slaying and particularly as to any participation in it by Walker. Furthermore, De La Roi was promised "all the protection in the world" if he divulged his knowledge. His "best of friends" had been brutally slain, in a cowardly manner, he now asks us to believe, by Eddie Walker in his presence, but by his answers to prison officials then, coupled with his conduct since, he has protected the now alleged slayer for nearly four years. He still continues to protect that slayer by allowing his own trial testimony to stand unrecanted.

It is immaterial to petitioner's guilt of the offense (assault with deadly weapon by life-term convict, Pen. Code, § 4500) and to the mandatory death penalty whether petitioner or Walker wielded the knife if both of them aided and abetted in the commission of the crime. (Pen. Code, § 31; *People* v. *Harper* (1945), *supra*, 25 Cal.2d 862, 870, 877.) Even if we give credence to Walker's declaration that it was he who struck the blows, such fact does not necessarily exculpate De La Roi from guilt. More important in this proceeding, it does not establish that the State knowingly procured and produced perjured testimony to convict De La Roi. If the confession be accepted as true in every respect, when we consider it, to-

gether with all the other evidence adduced, we are overwhelmingly impelled to the conclusion that petitioner and Walker have conspired to procure and produce perjured testimony and to defeat justice rather than that any officer or officers of the state have sought or accomplished any such ends. It thus appears that petitioner's claim that "here is a case where, in effect, there was no trial" and, hence, a denial of due process of law, is not sustained; neither is it true that the evidence now presented is "of a conclusive nature that the defendant did not commit the crime." There is nothing, therefore, to exclude this case from application of the established rule that a petition for habeas corpus based upon the same grounds set forth in a previous petition which was denied will be denied where there has been no change in the facts or law substantially affecting the legal rights of the petitioner. (*In re Miller* (1941), 17 Cal.2d 734, 735 [112 P.2d 10].) (The only claimed change in the showing now presented to the court, as distinguished from that presented on the prior application, is in the evidence, not in the facts [factual grounds] or in the law.)

As declared in *People* v. *Gilbert* (1944), 25 Cal. 2d 422, 442 [154 P.2d 657]. "The sentence of death, once pronounced, is a solemn judgment which cannot lightly be vacated or modified" and although the state, as it is exacting in ultimately bringing retribution to those who violate its highest laws, is "at least equally solicitous that those who are prosecuted shall be accorded full measure of every legal right," it will not "permit a scheming criminal to trifle with its processes." It is established beyond legal doubt that petitioner De La Roi has trifled with the judicial processes. He has schemed and conspired to deceive the court and impede or defeat justice in relation to a major crime. He and the witnesses produced by him, either at the trial or on the referee's hearing or on this application or in some or all of such proceedings, have wilfully presented false and material testimony. Under such circumstances the writ *coram nobis,* even if otherwise proper, will not be granted. (*People* v. *Gilbert* (1944), *supra,* 25 Cal.2d 422, 442, 444, and cases there cited.)

 It should also be pointed out that application for a writ *coram nobis* should be addressed in the first instance to the court in which the petitioner was tried and convicted (see 4 Cal.Jur.10-Yr.Supp., § 496, p. 891). As stated above, it is alleged in the petition presently before us that petitioner did apply to the trial court and that his application was denied.

But no formal appeal was taken from the judgment of denial and consequently we have no appellate jurisdiction over the cause.

■ The writ of error *coram vobis* issues to correct errors of fact of an inferior tribunal. (*People* v. *Black* (1928), 89 Cal.App. 225, 226 [264 P. 346].) The basis for its issuance is otherwise substantially the same as for a writ *coram nobis*. The same fault of petitioner which upon the facts shown here would preclude a trial court from granting the writ *coram nobis* blocks his application here for *coram vobis*.

The showing here made, insofar as petitioner is concerned, presents only a case for further investigation and consideration by the Governor of this state, if he be so advised. (Cal. Const., art. VII, § 1; see, also, *People* v. *Bowers* (1888), 2 Cal. Unrep. 878, 883 [18 P. 660]; *People* v. *Mooney* (1917), 176 Cal. 105, 108 [167 P. 696]; *People* v. *Superior Court* (1923), 190 Cal. 624, 625 [213 P. 945]; *People* v. *Vernon* (1935), 9 Cal.App.2d 138, 146 [49 P.2d 326]; *People* v. *Kelly* (1939), 35 Cal.App.2d 571, 575 [96 P.2d 372].)

Petitioner's application for further reference is denïed, as is also his application for a writ of error *coram vobis;* the writ of habeas corpus heretofore issued is discharged, and petitioner, Wilson De La Roi, is remanded to custody.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J, and Spence, J., concurred.