[Crim. Nos. 4803, 4900.  In Bank.  Aug. 31, 1948.]

THE PEOPLE, Respondent, v. ROBERT SHORTS, Appellant.

C. Stephen Casalina and George W. Norris for Appellant.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

SCHAUER, J.— ▇ This case presents initially the following question: In a death penalty case, after the judgment of conviction has been reviewed and affirmed on appeal and has been thereafter attacked in the trial court by motion to vacate (in the nature of *coram nobis*), which motion has been denied, does the right of the defendant to appeal from the order of denial carry with it as of course a right to stay of execution?

We conclude that the right is not absolute; that the final judgment which has been affirmed after review on appeal is possessed of strong presumptions of regularity and validity in every respect; that this court may, on proper showing, order execution of the judgment stayed on appeal from the order of denial of the motion to vacate but that in such appeals the burden is upon the defendant to make application for a stay and to accompany and support such application by a prima facie showing of substantial merit in the appeal and probable cause for reversal of the order; that wanting such prima facie showing the appeal must be deemed to have as

its only objective a delay in execution of the sentence under a valid final judgment, hence to be frivolous and irregular and subject to dismissal forthwith. ■ In other words, on appeal from an order denying a motion to vacate a judgment imposing the death penalty, where such judgment has previously been reviewed on appeal and affirmed, the burden is on the defendant to apply for a stay of execution of such final judgment and to support such application by a prima facie showing of substantial merit in his appeal and probable cause for reversal of the order denying the motion; in the absence of such prima facie showing not only will the application for the stay be denied but the appeal itself will be deemed taken for an improper objective—delay of execution of a final and valid judgment, not the correction of any legal wrong or the enforcement of any legal right—and, hence, to be frivolous and irregular and as such subject to dismissal forthwith.

■ It is to be remembered that a motion in the nature of an application for the writ *coram nobis* is an extraordinary remedy. Its availability—or the availability of other corrective judicial process, such as habeas corpus—to enable a convicted person, even after appeal and affirmance of a judgment of conviction, to establish that in truth the judgment was procured under circumstances which offend ''the fundamental conceptions of justice which lie at the base of our civil and political institutions'' has been recognized as constituting a part of the protection afforded by the due process clause of the Fourteenth Amendment. (See *Mooney* v. *Holohan* (1935), 294 U.S. 103, 110 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406]; *Taylor* v. *Alabama* (1948), 335 U.S. 252 [68 S.Ct. 1415, 92 L.Ed. ——].) But it approaches triteness to point out that the fact that the state must furnish a corrective process, available after trial and after a judgment of conviction has been affirmed on appeal, does not mean that in any particular case the defendant shall be entitled to relief. Furthermore, we are satisfied, the necessity for such process does not require that the procedure provided shall encompass, as an absolute right in every case, a further trial on issues of fact, or a right, independent of a prima facie showing of merit, to a stay of execution or to consideration on appeal. Our laws permit an appeal in *coram nobis* proceedings, either by the People (Pen. Code, § 1238; *People* v. *Gilbert* (1944), 25 Cal.2d 422, 444 [154 P.2d 657]; *People* v. *Lumbley* (1937), 8 Cal.2d

752, 761 [68 P.2d 354]) or by the defendant (Pen. Code, § 1237; *People* v. *Perez* (1908), 9 Cal.App. 265, 266 [98 P. 870]; *People* v. *Reid* (1924), 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435]; *People* v. *Schwarz* (1927), 201 Cal. 309, 312 [257 P. 71]; *People* v. *Campos* (1935), 3 Cal.2d 15, 19 [43 P.2d 274]; *In re Paiva* (1948), 31 Cal.2d 503, 507 [190 P.2d 604]), but such right of appeal by a defendant, we have concluded, in a case such as this, need go no further than to afford him a reasonable opportunity to make a prima facie showing of merit in the appeal as a basis for a stay of execution; and lacking a prima facie showing of merit and probable cause for reversal sufficient to warrant a stay of execution, the appeal itself may be dismissed. "Each state may decide for itself whether, after guilt has been determined by the ordinary processes of trial and affirmed on appeal, a later challenge to its essential justice must come in the first instance, or even in the last instance, before a bench of judges rather than before a jury." (*Hysler* v. *Florida* (1942), 315 U.S. 411, 417 [62 S.Ct. 688, 86 L.Ed. 932].) If the process is available and adequate to furnish relief in all meritorious cases it meets the requirements of both law and justice; that a particular defendant be promptly denied relief where he makes no prima facie showing of meritorious ground for relief is not an objectionable, but is, rather, a desirable, attribute of the process. (See Pen. Code, § 681a.) A court of last resort is properly zealous in requiring that a person charged with crime, particularly where the judgment of guilt spells death, shall be accorded as of right the last full measure of constitutional protection; but we are bound also to recognize that laws exist and are to be enforced for the protection of society as well as the protection of the accused and that expeditious enforcement of law is an important element of justice.

■ When a defendant has been informed against or indicted, has been afforded the right of counsel, has been regularly brought to trial, confronted with the witnesses, tried, convicted, had the benefit of appeal and suffered affirmance of the judgment of conviction, he stands in a position which is different from that which he occupied before he was found guilty of the offense. Before he was adjudged guilty the state was the attacker and bore the burden of proof to overcome the strongest presumption known to the law; but after verdict, and particularly after the judgment of conviction has been affirmed on appeal, the procedural burdens of the parties are transposed.

The care and solicitude of the state for justice continue unabated, always; but the presumption of innnocence of the defendant ended with the verdict, and the final, affirmed judgment of conviction is conclusive unless set aside upon a ground amounting to, akin to, or in the nature of extrinsic fraud or some other lack of due process, or, as has often been said in substance, upon proof that a fact existed which could not in the exercise of due diligence by the defendant have been proved at the trial, and which, if known then, would have precluded the judgment from being entered. (See *People* v. *Gilbert* (1944), *supra*, 25 Cal.2d 422, 442, and authorities there cited.) The defendant then, if he would set aside such judgment, must proceed as one who is at least prima facie guilty; he, now, is the attacker and has the burden of producing convincing proof of a fact which constitutes a legal ground for setting aside the judgment. The presumption that the judgment is valid in all respects is strong; the interests of justice and of humanity require that its terms be executed promptly if it be not set aside.

From what has been said it appears that any right to the *coram nobis* corrective process is subject to reasonable judicial control in the application thereof. In certain states a procedure different in form from that of this state safeguards the People from the use of meritless and tardy petitions for the writ of *coram nobis* to secure unwarranted delays in the execution of valid judgments of conviction. After a judgment of conviction has been affirmed, Alabama and Florida require that a defendant who seeks to have it set aside by the writ *coram nobis* shall secure from the appellate court which affirmed the judgment permission to file in the trial court his petition for writ of error *coram nobis*. The showing required in California on application for a stay such as the one before us is similar to that required by Alabama and Florida of one who seeks leave to petition for the writ. "Such application should make an adequate showing of the substantiality of the petitioner's claim to the satisfaction of this Court. A mere naked allegation that a constitutional right has been invaded will not suffice. The application should make a full disclosure of the specific facts relied upon, and not merely conclusions as to the nature and effect of such facts. The proof must enable this Court to 'ascertain whether under settled principles pertaining to such writ the facts alleged would afford at least prima facie just ground for an appli-

cation to the lower court for a writ of error *coram nobis*.'
And in the exercise of our discretion in matters of this char-
acter, this Court should look to the reasonableness of the
allegations of the petition and to the existence of the proba-
bility of the truth thereof.'' (*Johnson* v. *Williams* (1943), 244
Ala. 391, 394 [13 So.2d 683, 686], as quoted in *Taylor* v. *Ala-
bama* (1948), *supra,* 335 U.S. 252 [68 S.Ct. 1415, 92 L.Ed.
——] ; *Hysler* v. *Florida* (1942), *supra,* 315 U.S. 411, 416.)

In the Taylor case, *supra,* the United States Supreme Court
said : ''The question in this case is whether the State of Ala-
bama deprived the petitioner of due process of law under the
Fourteenth Amendment to the Constitution of the United
States when the Supreme Court of that State denied him per-
mission to file a petition for writ of error *coram nobis* in the
Circuit Court of Mobile County, Alabama. We hold that it
did not. We hold also that the Alabama procedure, whereby
one of its trial courts, by writ of error *coram nobis,* may set
aside its own judgment in a criminal case because of an error
of fact not apparent on the common law record, is a procedure
long recognized by the common law and constitutes due
process of law under the Fourteenth Amendment. We hold
further that the procedure of that State is in accordance with
long-established common law practice and constitutes due
process of law under the Fourteenth Amendment in requiring
that the permission of the Supreme Court of Alabama be
secured by a petitioner before filing such a petition for writ
of error *coram nobis,* in a trial court of Alabama, if it appears
that the trial court's judgment already has been affirmed by
such Supreme Court . . . The first question is whether this
Alabama procedure to secure a review of a judgment in a
criminal case by writ of error *coram nobis* constitutes due
process of law under the Fourteenth Amendment. It is clear
that it does . . . As distinguished from the traditional writ
of error enabling a superior court to review an error of law
committed by a trial court, the writ of error *coram nobis* brings
the error of fact directly before the trial court. However, when
the judgment of the trial court already has been affirmed by
the judgment of a superior court, then the trial court is bound
by the mandate of that superior court. Under those circum-
stances, it is appropriate to require a petitioner to secure, from
that superior court, permission to file his petition for writ of
error *coram nobis* in the trial court where he seeks an order

setting aside the judgment already affirmed by the superior court. This additional step was included in the Florida procedure which was favorably considered by this Court in *Hysler* v. *Florida, supra* [315 U.S. 411] . . . In passing upon this request that court was not bound to accept at face value the allegations of the petition. The issue was not submitted to it as though on a demurrer. That court was called upon to decide not only whether this new petition, if true, presented a meritorious ground for setting aside its previous judgment, but that court, in its supervisory capacity over the enforcement of the law, was called upon to determine also the reasonableness of the allegations made in the petition and the probability or improbability of their truth.''

■ Certainly the California procedure, which permits the convicted defendant, after affirmance of the judgment on appeal, to apply directly to the trial court for vacation of the judgment (and for stay of execution*) but which, we have concluded, reserves to this court, on appeal from an order denying the motion, the right in the exercise of judicial discretion to grant or to deny a stay of execution and to dismiss the appeal as irregular and frivolous when there is a failure to accompany and support the application for the stay by a prima facie showing of merit and probable cause, fully meets the constitutional requirements.

The salient facts of the case before us are as follows: Robert Shorts is confined in the state prison at San Quentin under sentence of death. The judgment of conviction was affirmed on November 17, 1947. (*People* v. *Isby,* 30 Cal.2d 879 [186 P.2d 405].) On April 13, 1948, Shorts applied to this court for stay of execution. His petition for stay alleges that April 16, 1948, was set as the day for execution of sentence; that the superior court heard and denied his petition for a writ of error *coram nobis*; that he has filed notice of appeal from the order of denial; and he seeks a stay ''in order to give the attorneys for Robert Shorts an opportunity to obtain the reporter's transcript of said hearing and to prepare said appeal.'' It appears that the petition for *coram nobis* was not filed with the superior court until April 5, 1948, nearly five *months* after the judgment of conviction was affirmed and only 11 *days* before the date set for execution. Although the application for the stay is clearly insufficient in the particulars hereinafter specified,

---

*See Rules on Appeal, rule 32.

we granted a temporary stay for two reasons: 1. In order that we might assure ourselves that the failure of Shorts to make a prima facie showing of merit was not due to any inadvertence on his part. 2. To enable us to fully review and declare the law covering this subject, to the end that future applicants for stays in similar proceedings shall have no basis for misapprehension as to the character and extent of the showing which they must make if they are to secure a stay and avoid dismissal of their appeal as irregular.

It is to be recognized that this court has appellate jurisdiction in criminal cases where judgment of death has been rendered (including proceedings which attack such a judgment by motion to vacate or petition for the writ of error *coram nobis*) and it also has power "to issue writs . . . necessary or proper to the complete exercise of its appellate jurisdiction" (Cal. Const., art. VI, § 4). This power to issue writs, inherent and expressly recognized by the Constitution, includes the power to stay execution of sentence of death (substantially equivalent to issuance of the writ of supersedeas) until final determination of a pending appeal from an order made after the final judgment imposing such sentence. The right to such an appeal would be worthless and the appellate jurisdiction of this court could not be exercised if the questions raised on a death penalty appeal were rendered moot by execution of the death sentence. (See *People* v. *Durrant* (1897), 119 Cal. 54 [50 P. 1070]; *People* v. *Durrant* (1897), 119 Cal. 201, 209-210 [51 P. 185]; *In re Albori* (1928), 95 Cal.App. 42, 48-50 [272 P. 321]; *People* v. *Biescar* (1928), 95 Cal.App. 70 [272 P. 328]; *In re Brahm* (1929), 98 Cal.App. 731 [277 P. 895]; *People* v. *Santos* (1933), 134 Cal.App. 227 [25 P.2d 235]; *Martin* v. *Rosen* (1934), 2 Cal.App.2d 450, 454 [38 P.2d 855]; *People* v. *Burnette* (1939), 34 Cal.App.2d 663 [94 P.2d 399]; *People* v. *Rodgers* (1940), 38 Cal.App.2d 360, 363 [101 P.2d 157]; *People* v. *Simpson* (1944), 65 Cal.App.2d 15 [151 P.2d 738]; *People* v. *Cox* (1944), 65 Cal.App.2d 712 [151 P.2d 269].)

Rule 32 of the Rules on Appeal recognizes the power of a reviewing court to grant such a stay of execution and the incidental power to grant a temporary stay pending a ruling on the application for a stay. This rule requires that "An application to the reviewing court for a stay of execution of a judgment of conviction on an appeal pending therein shall include a showing that proper application for such stay was

made to the superior court, and that such court unjustifiably refused to grant the stay.'' The application before us fails to show compliance with this rule.*

■ A more serious defect in the application for stay is Shorts' failure to show, prima facie, that the motion for *coram nobis* and the appeal from the order of denial have any substance or probability of merit. When he applied for a stay he did not furnish this court with a copy of his motion or petition for *coram nobis*. He alleged merely that he ''is prepared to show in said writ of error *coram nobis* that . . . Shorts is under the age of eighteen (18) at the present time.'' Section 190 of the Penal Code provides that ''the death penalty shall not be imposed or inflicted upon any person for murder committed before such person shall have reached the age of eighteen years; provided, further, that the burden of proof as to the age of said person shall be upon the defendant.'' The evidence available to support such asserted ground of the motion was not set forth by affidavit or otherwise. Shorts did not even attempt to sustain his essential burden of showing that he was prompt and diligent in seeking relief by way of *coram nobis* and that the controlling fact upon which he relies in that proceeding was not known to him at the time he was tried and convicted. It ordinarily is to be presumed that a person knows his own age; if a defendant claims that he was under eighteen at the time he committed a murder the law, as above noted, places on him the burden of proving his age. (Pen. Code, § 190.) In the absence of any showing of diligence and merit an appellant is not entitled to a stay to enable him to perfect his appeal. ■ One who applies for such a stay should make a prima facie showing that his appeal is taken in good faith, that some substantial and justiciable point is in actual controversy and that there is probable cause for reversal of the trial court's order. (See *People* v. *Rodgers* (1940), *supra,* 38 Cal.App.2d 360, 363.)

■ It is well settled that a showing of diligence is prerequisite to the availability of relief by motion for *coram nobis*. (*People* v. *Cabrera* (1936), 7 Cal.2d 11, 12 [59 P.2d 804];

---

*Whether the power of the superior court (prior to an appeal from its order) to stay execution of a death penalty upon motion to vacate an affirmed judgment is affected by section 3700 of the Penal Code, we do not consider. That section provides: ''No judge, court, or officer, other than the Governor, can suspend the execution of a judgment of death, except the warden of the State prison to whom he is delivered for execution, as provided in the six succeeding sections, unless an appeal is taken.'' Regardless of its meaning and validity otherwise, it has no application here as an appeal has been taken.

*People* v. *Lumbley* (1937), *supra,* 8 Cal.2d 752, 761; *People* v. *Gilbert* (1944), *supra,* 25 Cal.2d 422, 441; *In re De La Roi* (1946), 28 Cal.2d 264, 275 [169 P.2d 363]; *People* v. *Black* (1931), 114 Cal.App. 468, 473 [300 P. 43]; *People* v. *Vernon* (1935), 9 Cal.App.2d 138, 142-143 [49 P.2d 326]; *People* v. *Hammond* (1937), 22 Cal.App.2d 505, 506 [71 P.2d 334]; *People* v. *Kelly* (1939), 35 Cal.App.2d 571, 575 [96 P.2d 372]; *People* v. *Lewis* (1945), 72 Cal.App.2d 318, 320 [164 P.2d 295]; *People* v. *Egan* (1946), 73 Cal.App.2d 894, 900 [167 P.2d 766]; *People* v. *Darcy* (1947), 79 Cal.App.2d 683, 692 [180 P.2d 752]; see also 27 Cal.L.Rev. 228, 232.)

One who applies for a writ of *coram nobis* upon a ground such as the one here presented must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ; otherwise he has stated no ground for relief.

And one who seeks a stay of execution in order that he may perfect an appeal from an order denying the writ, where the only point involved appears on the face of the application and on the records already before this court to be a question as to the age of the defendant, which question on substantially conflicting evidence has been resolved adversely to the defendant by the trial court, must make some further prima facie showing of merit and diligence; otherwise he has failed to show that his appeal is taken in good faith.

We are of the view that where a defendant seeks to vacate a solemn judgment of conviction, particularly where such judgment has been affirmed on appeal, the showing of diligence essential to the granting of relief by way of *coram nobis* should be no less than the similar showing required in civil cases where relief is sought against lately discovered fraud. In such cases it is necessary to aver not only the probative facts upon which the basic claim rests, but also the time and circumstances under which the facts were discovered, in order that the court can determine as a matter of law whether the litigant proceeded with due diligence; a mere allegation of the ultimate facts, or of the legal conclusion of diligence, is insufficient. (See *Lady Washington C. Co.* v. *Wood* (1896), 113 Cal. 482, 486-487 [45 P.809]; *Burke* v. *Maguire* (1908), 154 Cal. 456, 465 [98 P. 21]; *Del Campo* v. *Camarillo* (1908), 154 Cal. 647, 657-658 [98 P. 1049]; *Nichols* v. *Moore* (1919), 181 Cal. 131, 132-138 [183 P. 531]; *Consolidated R.*

& P. Co. v. *Scarborough* (1932); 216 Cal. 698, 702 [16 P.2d 268]; *Hobart* v. *Hobart Estate Co.* (1945), 26 Cal.2d 412, 441, 442 [159 P.2d 958].) Furthermore, it must appear that the new matter averred is truly newly *discovered* by the defendant, not merely newly *disclosed*. (See *Taylor* v. *Alabama* (1948), *supra*, 335 U.S. 252 [68 S.Ct. 1415, 92 L.Ed. ——]; *In re De La Roi* (1946), *supra*, 28 Cal.2d 264, 271, 275.) As is said in 31 American Jurisprudence, at page 325, section 806: "It is essential to the availability of the remedy of coram nobis or coram vobis that the mistake of fact relied upon for relief was unknown to the applicant at the time of the trial, and could not by the exercise of reasonable diligence have been discovered by him in time to have been presented to the court . . . A reason assigned for the rule is that if the applicant for the writ has knowledge of the fact, and such fact if divulged would be for his benefit, he should not be permitted to conceal it, gamble upon the issue, and, being disappointed therewith, ask the court to relieve him from the consequences of his own intentional or negligent act."

Since the temporary stay of execution was granted herein, the record on appeal from the denial of Shorts' motion for *coram nobis* has been filed with us. From this record it is apparent that the application for stay of execution to permit the appeal to take the full course and time of a regular appeal was not inadvertently defective in its omission of the essential showing of diligence and of merit. The petition for *coram nobis* was accompanied by an affidavit of Shorts' attorney, who avers that "at the time of . . . trial said attorney was under the impression that Robert D. Shorts was over the age of eighteen (18) years of age; that since that appeal [from the judgment of conviction] was filed said affiant has discovered that Robert D. Shorts was, at the time of the commission of the act of murder, under the age of eighteen (18) years . . ." It further appears from such affidavit that in or about August, 1947, the attorney was in possession of the evidence (affidavits) upon which he relies to show the age of Shorts. As stated above, the judgment of conviction was affirmed on November 17, 1947, and the petition for *coram nobis* was not filed until April 5, 1948. The papers in support of the motion for *coram nobis* contain no explanation whatsoever for the delay in moving for the writ. The only explanation offered at any time for such delay was the oral statement of the attorney to the trial court on argument of the motion that

he had hoped to produce witnesses from Mississippi. This is not an excuse for delaying presentation of the motion until a few days before the date set for execution of sentence.

Furthermore, neither the petition for the writ, the accompanying affidavit of Shorts' attorney, nor any other of the affidavits filed in support of the motion contains any averment that Shorts himself did not at all times know his age. Clearly a defendant who has knowledge of a fact but does not disclose it until after final judgment of conviction, and who does not attempt to explain his nondisclosure, has not made the requisite showing of diligence and good faith. (See *People* v. *Cabrera* (1936), *supra,* 7 Cal.2d 11, 12; *People* v. *Vernon* (1935), *supra,* 9 Cal.App.2d 138, 142, 145; see also *Taylor* v. *Alabama* (1948), *supra,* 335 U.S. 252 [68 S.Ct. 1415, 92 L.Ed. ——] ; *In re De La Roi* (1946), *supra,* 28 Cal.2d 264.) The only attempt to establish the essential fact of want of knowledge on the part of defendant himself is the unsupported statement of defendant's counsel, made orally to the trial court on argument of the motion and in his brief before this court, that at a previous trial (which ended when the jury could not agree upon a verdict) defendant testified that he did not know his age. If this be so, it shows want of diligence in that an inquiry was not thereupon promptly initiated.

It is to be observed also that the transcript filed with this court on the appeal from the judgment of conviction (which transcript was also in evidence in the *coram nobis* trial) shows that Shorts gave his age as 27 years when he was arrested in November, 1946. In testifying upon direct examination at the trial of the cause on April 7, 1947, at which time he was represented by able counsel of his own choosing, he stated that he was ''nineteen years old.'' He then explained his previous claim of the age of 27 years by stating that he had ''raised [his] age'' because he was ''trying to [get] work.'' Throughout cross-examination he adhered to his claim that his ''true age'' was ''nineteen'' as of the time of trial, despite the fact that he admitted that he ''first registered for the draft in '42,'' which was five years prior to that time. He also admitted upon the trial that he had suffered a prior conviction in May, 1944, for a violation of section 4532 of the Penal Code (escape from jail), for which he served a term in the state prison at San Quentin. To give any semblance of validity to petitioner's claim that he is now—in 1948—under the age

of 18 years, petitioner must necessarily contend that he was but 11 years of age when he registered for the draft in 1942, and that he was but 13 years of age when he was sentenced to San Quentin on his prior felony conviction involving an escape from jail. Coupled with the weakness of the showing here, such earlier testimony of the defendant indicates an utter lack of good faith on his part in instituting the proceeding for a writ of error *coram nobis* and in seeking to prosecute this appeal from the trial court's order.

The grounds upon which a writ of error *coram nobis* may be granted are strictly limited. The function of the writ and the types of situation to which it may apply are discussed at length in *People* v. *Reid* (1924), 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435]; and in *People* v. *Gilbert* (1944), *supra,* 25 Cal.2d 422, 440-444. Suffice it to say here that research discloses no case in which this remedy has been held available to obtain relief where the sole alleged fact upon which the petitioner relies in the *coram nobis* proceeding is wholly inconsistent with the facts developed and asserted by petitioner in his own testimony upon the trial of the cause, while declarations directly to the contrary appear in the previously noted cases of *In re De La Roi* (1946), *supra,* 28 Cal.2d 264, 275, and *People* v. *Black* (1928), 89 Cal.App. 219, 224 [264 P. 343].

We can only conclude that the appeal from the order denying the motion for *coram nobis* has been taken solely for the purpose of delaying execution of sentence on a final and valid judgment. We deem it incontrovertible that in a death penalty case such as this wherein, on an appeal from an order denying the writ *coram nobis,* there is an utter lack of showing of merit and diligence sufficient to warrant a stay of execution, the appeal itself may properly be held to have been taken solely for delay, therefore to be irregular as having no proper appellate objective and, hence, to be sham and frivolous and subject to dismissal. In such circumstances not only will the stay be denied but the appeal will be dismissed. (See *People* v. *Smith* (1933), 218 Cal. 484, 487, 489 [24 P.2d 166]; Pen. Code, § 1248 ["If the appeal is irregular in any substantial particular, but not otherwise, the appellate court may order it to be dismissed"].)

In *People* v. *McNulty* (1892), 95 Cal. 594 [30 P. 963], this court expressed the view that an appeal could not be dismissed on the ground that it is *frivolous*; its *irregularity* as having no proper appellate objective was not specifically discussed.

It was said (p. 595 of 95 Cal.), "To dismiss an appeal is to refuse to consider its merits, and therefore there can be no dismissal of an appeal on the ground that it is without merit; for to reach this conclusion the merits must be considered, and the record must be examined," and that (p. 596 of 95 Cal.) where there is "an appealable order and notice of appeal therefrom substantially and formally sufficient" the appeal is not "irregular in any substantial particular" within the meaning of section 1248 of the Penal Code, no matter how obvious its lack of merit. With this view we cannot agree; where it appears without any serious contention to the contrary that an appeal from an order after final judgment in a death penalty case is taken solely for purposes of delay, the appeal must be held to be irregular in a most fundamental sense. Its objective is not the correction of error, the enforcement of legal right, or the reversal of the trial court; it seeks only groundless delay, and to that extent defeat of justice, in the execution of a valid final judgment. It is also to be observed that in the McNulty case the court pointed out that an appeal from an order after final judgment does not stay execution as of course; that if execution is to be stayed "the *onus* rests upon the appellant to convince the judge of the superior court or one of the justices of this court that there is some merit in his appeal. If he cannot,—if his appeal is clearly frivolous,—no certificate will be granted, and there will be no stay." (*People* v. *McNulty* (1892), *supra,* 95 Cal. 594, 597.) Furthermore, since the McNulty case was decided, the Legislature has enacted for the guidance of all the courts of this state in the handling of criminal cases a very positive admonition of policy. "The welfare of the people of the state of California requires that all proceedings in criminal cases shall be heard and determined at the earliest possible time. It shall be the duty of all courts and judicial officers and of all district attorneys to expedite the hearing and determination of all such cases and proceedings to the greatest degree that is consistent with the ends of justice." (Pen. Code, § 681a.)

It is true that in the present case we have examined the record on appeal in order to determine whether the application for stay of execution to permit the presentation of such record was inadvertently defective. But we do not consider ourselves obligated to make such examination where, as here, an application for stay of execution to permit perfection of

a pending appeal does not purport to show that the appeal has any semblance of merit. Expressions in *People* v. *McNulty* (1892), *supra*, 95 Cal. 594, and *People* v. *Godfrey* (1929), 100 Cal.App. 91 [279 P. 1030], which are inconsistent with this opinion are overruled and disapproved.

For the reasons above stated the stay heretofore granted is terminated (Cr. 4803), the appeal from the order denying the petition for *coram nobis* is dismissed (Cr. 4900), and the trial court is directed to proceed with execution of its sentence in the manner provided by law.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

EDMONDS, J.—This case, in my opinion, presents no question concerning the right of the defendant, as of course, to a stay of execution in connection with an appeal from an order of denial of his petition for *coram nobis*. The stay was granted for the express purpose of allowing the appeal to be perfected and heard. That has been accomplished, and whether or not the stay was granted erroneously is a question not now before the court. The only proceeding in which, properly, there may now be a decision is the appeal (Crim. 4900); the order granting the stay has accomplished its purpose (Crim. 4803).

I concur in the conclusion reached *after an examination of the record* that the appeal should be dismissed as frivolous. But I disagree with the dicta which purports to declare the procedural law applicable to a petition for a stay of execution and to the determination that an appeal may be dismissed prior to a hearing upon the merits, in the absence of procedural irregularity.

There is no logical basis whatever for placing the dismissal of an appeal upon the basis of deficiencies in the application for a stay of execution. It is said that the court, in denying the application for the stay, can conclude that "the appeal itself will be deemed taken for an improper objective—delay of execution of a final and valid judgment, not the correction of any legal wrong or the enforcement of any legal right— and, hence, to be frivolous and irregular and as such subject to dismissal forthwith." But in the present case the stay was not denied; it was granted and at the time the order was made the record was not before the court. For each of these reasons, therefore, the statement is entirely beyond the scope of the issues proper for consideration.

An application for a stay of execution may be made when an appeal is pending (Pen. Code, §§ 1243, 3700; Rules on Appeal, rule 32[a]) and the petition on behalf of Shorts requested delay for the purpose of giving his attorneys "an opportunity to obtain the reporter's transcript of said hearing and to prepare said appeal." But a decision on the application for a stay can have no direct effect upon, nor decide, an appeal in which the record is not before the court, and may not be filed for an additional 30 to 90 days. (Rules on Appeal, rules 35[c] and [d].) At least by analogy, the decision in the case of *In re Paiva*, 31 Cal.2d 503 [190 P.2d 604], requires the court to grant a stay of execution in every case where the defendant has filed a notice of appeal from an order denying a writ of error *coram nobis*.

"[A]n order made in a proceeding in the nature of a writ *coram nobis* is an order in the original case, after final judgment therein, which 'affects the substantial rights' of the party (either the plaintiff or the defendant, as the case may be) and gives him a right of appeal as provided for by sections 1237 and 1238 of the Penal Code." (*In re Paiva, supra,* p. 510.) An appeal is a matter of right (see Pen. Code, § 1237) and may only be dismissed by an appellate court after consideration of the record upon its merits, unless the appeal itself is irregular in some substantial procedure. (Pen. Code, § 1248.) "The right of appeal is conferred by the constitution, and statutes and rules of procedure for its exercise are to be liberally construed; and no appeal will be dismissed upon technical grounds, where there has been no violation or disregard of any express rule of procedure." (*People* v. *Preciado,* 31 Cal.App. 519, 522 [160 P. 1090], quoting from *Estate of Nelson,* 128 Cal. 242 [60 P. 772].)

To deny an application for a stay of execution during the pendency of an appeal from an order denying a writ of error *coram nobis* would allow the execution of the defendant before the hearing of that appeal, which the court has said is from an order "in the original case" and accorded "as a matter of right." As the court has now characterized such an order in a capital case it stands in substantially the same position as the judgment and sentence and the law has gone to great lengths in guaranteeing to every defendant an appellate review of the decision which imposes the penalty of death.

Furthermore, the appeal of Shorts now has been considered on its merits and the decision dismissing it is not inconsistent

with the rule of *People* v. *McNulty*, 95 Cal. 594 [30 P. 963], and *People* v. *Godfrey*, 100 Cal.App. 91 [279 P. 1030]. Section 1248 of the Penal Code provides, "If the appeal is irregular in any substantial particular, but not otherwise, the appellate court may order it to be dismissed." The McNulty case merely reiterates this rule and points out that on a motion to dismiss an appeal for reasons other than irregularity in taking it, the merits of the case are in issue and the motion cannot be granted when the record is not before the court. Otherwise stated, the record must be the basis for a decision upon the merits. This is a fundamental rule of appellate procedure of long standing; to overrule it means judicial repeal of section 1248 of the Penal Code. Certainly an appellate court should not determine an appeal prior to the time the record is before it upon the assertion of the respondent that no substantial question of law is presented.

Traynor, J., concurred.

