[Crim. No. 5770. In Bank. Oct. 28, 1955.]

THE PEOPLE, Respondent, v. HENRY THOMAS, Appellant.

A. J. Zirpoli for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

CARTER, J.—This is an appeal from an order of the superior court denying a motion to vacate a judgment of conviction rendered by that court which imposed the death penalty for murder of the first degree after a plea of guilty; the motion in the court below was also for withdrawal of the plea of guilty, and for a stay of execution. The proceeding in the court below would thus appear to be an application for a writ of *coram nobis*. This court granted a stay of execution in order that defendant's appeal might be considered. The judgment of conviction was affirmed by this court on automatic appeal. (*People* v. *Thomas*, 37 Cal.2d 74 [230 P.2d 351].)

In support of his motion defendant presented to the court below an affidavit in which he stated: (1) That he is in the custody of the warden of San Quentin Prison under the judgment of conviction; that although the judgment recites that after a hearing on the degree of the offense the court asked defendant whether he had any legal cause to show why judgment should not be pronounced and defendant made no reply, that such was not true and he was not so asked. (2) That defendant was arraigned on December 4, 1950, and counsel for him, Brawman, was appointed. At the time to plead on December 6, after a short appearance in court, Brawman, the district attorney, and judge retired to the latter's chambers where the judge stated that Brawman had told him defendant was ready to plead guilty but hoped he might be saved the death penalty and that the district attorney would not insist on that penalty under those circumstances. The judge had told Brawman he wanted to think it over and suggested the instant conference. At the conference the judge said that he had since gone over the transcript of the preliminary examination and would not bargain since he was inclined to impose the death penalty whether the plea was guilty or not guilty. Brawman, the district attorney and judge then returned to the courtroom and the judge declared court in session again. Defendant claims that Brawman did not tell him of the conference and that he had no knowledge thereof. (3) That the trial was "fatally infected" because: (a) He was denied effective assistance of counsel because Brawman consulted with him for only a "few minutes" on the day of arraignment; a "few minutes" in the sheriff's office thereafter and for five minutes after the conference heretofore mentioned. (b) There was not a "competent and intelligent" waiver of a jury trial. (c) The court did not advise him of his rights and the consequences of a plea of guilty. (d) The plea was not understandingly entered and the proceedings were too hurried. (4) That he told his counsel that he had a good military record; that he had some whiskey before the robbery; that there was a scuffle before he shot and he had not intended to kill Mrs. Ainsworth; that none of these things were brought out at the hearing on the degree of the crime and the punishment to be imposed. Defendant presented points and authorities with his motion. After considering defendant's affidavits and points and authorities the motion was denied.

The attorney general has noticed a motion to dismiss the

appeal or to affirm the court's order of denial on the ground that the motion was frivolous and only to delay the execution in that the issues raised on the motion had been adjudicated adversely to defendant by this court in the original automatic appeal (*People* v. *Thomas, supra,* 37 Cal.2d 74), and in the denial of two petitions for habeas corpus, as well as by the United States District Court and Court of Appeals (*Thomas* v. *Teets,* 220 F.2d 232) ; that since defendant's motion in the trial court was a petition for a writ of error *coram nobis* it should have been addressed to this court under section 1265 of the Penal Code.[1]

With reference to the last contention that a petition for a writ of error *coram nobis* must be made to an appellate court, although this court has not passed on section 1265, *supra,* the District Court of Appeal has held that it is not a violation of due process nor an encroachment of the jurisdiction of the superior court as stated in our Constitution (Cal. Const., art. VI, § 5; *People* v. *Sica,* 116 Cal.App.2d 59 [253 P.2d 75]) and that the jurisdiction of the appellate court is exclusive. (*People* v. *Dunlop,* 102 Cal.App.2d 314 [227 P.2d 281] ; *People* v. ·*Schunke,* 102 Cal.App.2d 875 [228 P.2d 620] ; *People* v. *Ponce,* 103 Cal.App.2d 271 [229 P.2d 77].) The language of section 1265 is clear and defendant has presented no excuse for not applying to this court for *coram nobis.*

With regard to the prior applications for habeas corpus both in this court and the federal courts mentioned by the attorney general, it appears that applications for habeas corpus were made to this court and denied on August 28, 1951, and July 6, 1955. The United States Supreme Court denied certiorari in each case. The grounds advanced in those proceedings are the same, with one omission,[2] as in the instant one. In the federal courts the district court held a hearing to determine the facts and then denied habeas corpus. That was affirmed by the court of appeals (*Thomas* v. *Teets, supra,* 220 F.2d 232, 234) where the court stated the facts as follows :

---

[1] ". . . if a judgment has been affirmed on appeal no motion shall be made or proceeding in the nature of a petition for a writ of error coram nobis shall be brought to procure the vacation of said judgment, except in the court which affirmed the judgment on appeal." (Pen. Code, § 1265.)

[2] Heretofore defendant had, in addition, claimed that the sheriff told him he had better plead guilty because if it got out that he was a Negro it would be bad for him. The facts were determined adversely to him on that issue in the federal court proceedings, *infra.*

" 'It is manifest that his attorney conveyed to petitioner the substance of the conversations had with the trial judge.' . . . This of course is the testimony of the lawyer which it is apparent the trial court believed. This testimony disclosed that the lawyer fully advised Thomas of the seriousness of the situation; of the difficulty of decision as to whether to plead guilty or not guilty, and that Thomas himself made the decision, against the lawyer's advice, although the lawyer did not overrule it since Thomas appeared to be a very intelligent person and he felt the decision should be made by Thomas." It was there concluded that defendant was not denied the effective assistance of counsel, or deceived by his counsel, or prevented from having a hearing on the degree of the crime and the punishment to be imposed.

■ The denial of habeas corpus by this court and by analogy the denial of a writ by the federal courts makes appropriate the application of the rule that: " 'There is nothing . . . to exclude this case from application of the established rule that a petition for habeas corpus based upon the same grounds set forth in a previous petition which was denied will be denied where there has been no change in the facts or law substantially affecting the legal rights of the petitioner.' (*In re Miller* (1941), 17 Cal.2d 734, 735 [112 P.2d 10].)" (*In re Chessman*, 43 Cal.2d 391, 399 [274 P.2d 645], quoting from *In re De La Roi*, 28 Cal.2d 264, 275 [169 P.2d 363].) In the automatic appeal this court said: "At that time, after a brief appearance in court, counsel for defendant and McCain's counsel, and the district attorney retired to the judge's chambers where the judge said that Mr. Brawman had spoken to him in regard to the possibility of defendant's avoiding the death penalty by making a 'certain' plea. The judge remarked that he had read the transcript of the preliminary hearing and that he was 'inclined' to give the 'extreme' penalty whether he pleaded guilty or not guilty. On returning to court, defendant pleaded guilty and December 11, 1950, was fixed as the time for 'pronouncing judgment,' later continued to December 14, 1950, when the court announced it would hear evidence on the degree of the offense. The district attorney called decedent's husband, Ainsworth, to the stand and he testified to the facts relating to the killing. Defendant's counsel was asked by the court if he wished to cross-examine and declined. The court then remarked: 'Step down (addressing the witness). I don't think we will need any further.' The district attorney then

made the same remark, to which the court replied 'All right.' Defendant's counsel remained silent. The court then stated that it was murder of the first degree. Thereafter when asked by the court whether he had any legal cause to show why sentence should not be pronounced, defendant stood mute. The death penalty was imposed.

"There is no question that the evidence is ample to establish murder in the first degree, for it was committed while attempting to commit robbery. (Pen. Code, § 189.) Defendant's excuse for not offering any evidence on the question of penalty is that the court's remark heretofore quoted foreclosed such offer. That remark may not necessarily be so construed, and the court, as seen, did not only take the evidence on the subject consisting of Ainsworth's testimony, but also the evidence given at the preliminary hearing which went into the details of the crime from the planning of it to the flight. Moreover, defendant stood mute when asked if he had any legal cause to show why sentence should not be pronounced and it was not until then that the death sentence was 'pronounced.' " (*People* v. *Thomas, supra*, 37 Cal.2d 74, 75-76.)

Insofar as the question of the alleged failure of the court to ask defendant if he had any reason why judgment should not be pronounced, we stated, as above seen, on the automatic appeal (*People* v. *Thomas, supra*, 37 Cal.2d 74, 76) that when defendant was asked the question he stood mute. Although it does not appear in the reporter's transcript whether the question was asked it was recited by the court in its judgment that it was. In any event, while the requirement (Pen. Code, §§ 1200, 1201) that the question be asked is substantial and a failure to ask it is fatal to the judgment if defendant has been deprived of counsel (*In re Levi*, 39. Cal.2d 41 [244 P.2d 403]) it is not fatal where defendant is present and represented by counsel and no prejudice appears (*People* v. *Henry*, 86 Cal.App.2d 785 [195 P.2d 478]; *People* v. *Hawthorne*, 63 Cal.App.2d 262 [146 P.2d 517]; *People* v. *Swift*, 140 Cal.App. 7 [34 P.2d 1041]; *People* v. *Wademan*, 38 Cal.App. 116 [175 P. 791]). In the absence of any showing to the contrary we must assume that the recital in the judgment is correct. (*People* v. *Wademan, supra*, 38 Cal.App. 116, 137.) Defendant's counsel was fully advised of all circumstances bearing upon the degree of the crime and punishment to be imposed and had an opportunity to present them at the hearing. Both defendant and

his counsel were present when judgment was pronounced and no objection was made.

■ With respect to that part of defendant's motion which asked to withdraw his plea of guilty it has been said: "The proper procedure for withdrawal of a plea after judgment is a motion to set aside the judgment and to permit a withdrawal of the plea. Such a motion is in the nature of. and is subject to the rules governing, an application for a writ of *coram nobis*." (14 Cal.Jur.2d, Criminal Law, § 260.)

■ And "An application for withdrawal of a guilty plea after judgment will be granted, however, only where there exists some fact that, had it been known to the court, would have prevented rendition of the judgment, which fact was not known to defendant at that time, and which, without fraud, mistake, or negligence of the defendant, was not presented to the court." (14 Cal.Jur.2d, Criminal Law, § 259.) No such after discovered facts appear here.

In view of the repeated adjudications of the issues raised by defendant and the making of his application for the writ of *coram nobis* to the wrong court in the face of section 1265 of the Penal Code, *supra*, defendant's appeal should be dismissed. (See *People* v. *Adamson*. 34 Cal.2d 320 [210 P.2d 13] ; *People* v. *Shorts*, 32 Cal.2d 502 [197 P.2d 330] ; *In re De La Roi, supra*, 28 Cal.2d 264.)

The appeal is dismissed, the stay of execution heretofore granted is terminated, and the trial court is directed to proceed with execution of its sentence in the manner provided by law.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.