[Crim. No. 3265. Second Appellate District, Division One.—November 22, 1939.]

THE PEOPLE, Respondent, v. LEONARD KELLY, Appellant.

Alexander L. Oster for Appellant.

Earl Warren, Attorney-General, and L. G. Campbell, Deputy Attorney-General, for Respondent.

WHITE, J.—Defendant, under the name of Jack Sinclair, was charged with the crime of bigamy, in that he "did knowingly, willfully and feloniously marry one Virginia Roszkowski, said defendant being then and there the lawful husband of another person, to-wit, Louise J. Sinclair, . . . ". A trial before a jury resulted in a verdict of guilty, whereupon, it appears, defendant for the first time disclosed to his counsel that prior to his marriage to Louise J. Sinclair he had been lawfully married to one Ella Miller, but had not heard from her for more than five years prior to his marriage to Virginia Roszkowski. This fact was presented to the trial court upon a motion for a new trial as "newly discovered evidence". The motion being denied, defendant appealed, and the judgment of conviction and the order denying the motion for new trial were affirmed by Division Two of this court. (*People* v. *Kelly,* 32 Cal. App. (2d) 624 [90 Pac. 605].) Upon the going down of the *remittitur* after denial of a hearing by the Supreme Court, defendant moved the trial court to vacate and set aside the judgment. This appeal is from the order denying such motion.

In support of his motion to vacate the judgment the defendant filed an exemplified copy of a certificate of his marriage to Ella Miller in Jefferson County, Kentucky, and an affidavit by the clerk of the circuit court of Jefferson County, Kentucky, to the effect that the records of that court disclosed

no action of divorce between defendant and his first wife, Ella. There was also filed in support of the motion an affidavit by defendant himself alleging, in substance, that he married Ella Miller in 1921 in Louisville, Kentucky; that in December, 1922, he was convicted of a crime in Indiana and was imprisoned for a period of thirteen months thereafter; that upon his release from prison Ella told him she desired to obtain a divorce, and affiant gave her the money to obtain the divorce and then left Kentucky; that in 1926, under the name of Jack Sinclair, affiant married Louise Trotter, in Cleveland, Ohio, believing he was divorced from Ella, and he and Louise Trotter lived together as man and wife until February, 1938; that in 1929 affiant visited Louisville and met Ella, who told him she had not obtained a divorce, whereupon he again gave her money to obtain a divorce; that affiant has never been served with divorce papers, nor has he any knowledge or information that Ella ever obtained a divorce; that during 1930 he attempted to contact Ella, but his letters to her and to her relations were returned unopened or remained unanswered, and that affiant is ignorant of her whereabouts and has not seen or heard from her since 1929; that in April, 1938, affiant's second wife, Louise, informed him that she had divorced him, and about May 1, 1938, ejected him from their home, at the same time showing him papers which she stated were her divorce papers; that believing he was divorced from Louise, he married Virginia Roszkowski in June, 1938.

As excusing his failure to disclose these facts to his counsel until after he was convicted, affiant alleged: ''That affiant did not inform his counsel . . . of the fact of his marriage to said Ella Miller, until after his trial was completely over and a verdict of guilty of bigamy had been returned against him by the jury on the 27th day of October, 1938, because affiant was in total ignorance of the materiality of said facts. That affiant believed that the fact that he had not heard from said Ella, for so many years validated his marriage to said Louise, and that he never gave the matter any consideration whatsoever and did not deem the facts important enough to discuss with his attorney.''

The matter before us, entitled ''motion to vacate judgment and sentence'', is concededly what is sometimes known as an application for a writ of error *coram nobis,* the

two being legal equivalents. ■ By appellant's motion the court was asked to vacate the judgment and sentence pronounced against him by reason of his claim that his marriage to Louise Trotter was bigamous since Ella was his wife at the time of its solemnization, but that his marriage to Virginia Roszkowski is valid because he had not heard from Ella for five years. This he asserts pursuant to the provisions of subdivision 1 of section 282 of the Penal Code. In other words, appellant is before the court admitting that he committed the crime of bigamy when he married Louise Trotter on April 5, 1926, but that he was not prosecuted on the offense that could be proven against him, but was, he says, prosecuted on a charge involving his last marriage, to Virginia Roszkowski, which he claims was not bigamous because he had not heard from Ella Miller, whom he first married, for five years. The fact that he was admittedly guilty of bigamy when he entered into his second marriage may well account in both logic and reason for his neglect to advise his counsel thereof prior to his conviction.

From appellant's affidavit it is apparent that he went through his trial on the theory that his second marriage, to Louise Trotter, was legal, because in his affidavit he deposes that "affiant believed that the fact that he had not heard from said Ella, for so many years validated his marriage to said Louise". Then, waiting until after his conviction and the affirmance thereof on appeal, appellant asks us to set aside such conviction and the judgment predicated thereon because of the illegality of a marriage which he considered and asserted to be legal at his trial. It is manifest that appellant was not laboring under any mistake of fact as defined by section 1577 of the Civil Code, but that his was a mistake of law, for as was said in *O'Brien* v. *Selskab*, 94 N. J. L. 244, 246 [109 Atl. 517] ; 40 Cor. Jur. 1227, "A mistake of fact is where a person understands the facts to be other than they are; whereas a mistake of law is where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts."

■ Further, even though the truth of the facts forming the basis of appellant's motion be conceded, and if presented at his trial might have brought about a different result, it does not necessarily follow that he is here entitled to the relief sought. The rule in this regard is well summarized

in *State* v. *Boyd,* 117 Neb. 320 [220 N. W. 281, 58 A. L. R. 1283], wherein appears the following language:

"If the defendant has knowledge of a fact which, if divulged, would be for his benefit, he should not be permitted to conceal such fact, take his chance upon the issue, and, being disappointed therewith, ask the court to relieve him from the consequences of his own intentional or negligent act. To allow such procedure would countenance trifling with the courts to an extent very much greater than their tenderness for the rights of persons accused of crime already has permitted."

The nature and purpose of a writ of error *coram nobis,* both at common law and where permitted under our procedure in this state, are fully set forth in *People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435], and need not here be repeated. Suffice it to say that when recourse is had to this rather unusual remedy under our procedure the applicant therefor should be held to reasonable diligence in asserting his claim. Even if we assume that the purpose of the writ could be so extended as to cover a situation which, as here, was fully known and brought out in open court on the motion for new trial prior to judgment, the defendant should not be permitted to take his chances upon an appeal and then, following an unfavorable result, be allowed to urge for the first time, in order to have the whole proceeding gone over again, a motion such as the one before us, which he either neglected or preferred not to make prior to the prosecution and determination of his appeal. ▇ In the case at bar we do not find that freedom from negligence or excusable mistake which would warrant the application of the extraordinary writ sought. Neither do we find that requisite diligence in utilizing it after the alleged grounds for its application first appeared in the record. Appellant's own affiavit in support of his motion demonstrates that of the three marriages to which he was a party he contracted both the second and third without dissolution of the preceding ones. The writ of error *coram nobis* is designed to purify and keep pure the administration of justice, and was never intended to enable the guilty to escape punishment. Under the facts here presented the courts cannot indulge in strained inferences that appellant was in fact married to someone else when he contracted his second marriage and therefore

should be absolved of legal wrong in marrying his third wife under the representation that he was an unmarried man. When, as in the instant case, the facts complained of were known to the defendant before and during the trial and advantage could have been taken thereof at the trial and was taken on the motion for new trial, and where, as here, defendant preferred to speculate on the outcome of the appeal, we are unable to discover any reason based either upon general principles or upon the particular showing here made, why the appellant is entitled to the relief for which he petitions. To hold otherwise would be to validate and recognize a rule that would be most disastrous in its results, so far as order and system in the administration of justice are concerned.

The order appealed from is affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 21, 1939.