166 Cal.App.2d 353 (1958)
SOUTHERN PACIFIC COMPANY (a Corporation), Appellant,
v.
GEORGE M. FISH et al., Respondents.
Civ. No. 22933. 
California Court of Appeals. Second Dist., Div. One. 
Dec. 18, 1958.
 A. T. Suter, Frederick E. Fuhrman, E. D. Yeomans, Walt A. Steiger and John H. Gordon for Appellant.
 Schramm, Raddue & Seed and Edward W. Schramm for Respondents.
 LILLIE, J.
 This is an appeal by plaintiff from summary judgments in defendants' favor in each of the above actions which were consolidated for the purpose of considering defendants' motions. Hereinafter, and for the purposes of this appeal, we shall treat the motions as a single pleading.
 From the affidavit supporting the motion, and the entire record before us, it appears that the instant litigation had its genesis in a dispute over the availability of transit privileges or service at defendants' Santa Barbara processing plant, with respect to several carloads of dried beans and peas shipped from points in Idaho and Washington by way of Portland, thence to Santa Barbara and finally to eastern destinations. The recognized privilege of transit enables a commodity to be shipped from point A to point B, there to be stored, marketed or processed, and later reshipped to point C at a rate less than the combined separate rates from A to B and B to C.
 During the time in question defendants were engaged at Santa Barbara in the processing of beans and peas to be sold in eastern markets. They arranged to do business with growers in the Pacific Northwest and accordingly made certain inquiries from a Union Pacific freight agent in Idaho, there and then alleged by defendants to be likewise acting for plaintiff, who advised them that, under the rules and regulations *356 of the Interstate Commerce Commission, transit privileges were available at Santa Barbara in connection with transcontinental rates from Portland, Oregon, and that defendants could avail themselves of such rates and transit service by paying the local rates from Idaho origins to Portland, plus the rates from Portland to eastern destinations. Between April of 1949 and February of 1951, defendants shipped from points in Idaho and Washington, by way of Portland, numerous carloads of dried beans and peas consigned to themselves at Santa Barbara. Plaintiff, as delivering carrier, collected charges at Santa Barbara based on the combination of local rates to and from Portland with respect to the Idaho shipments, and on the basis of the joint through rates via Portland on the Washington carloads. On the outbound shipments from Santa Barbara, after the transiting operation had been completed, tariff charges based on the transcontinental rate from Portland via Santa Barbara were assessed and paid to plaintiff. Thereafter, at defendants' request, plaintiff refunded to them that portion of the charge pertaining to the movement from Portland to the transit point at Santa Barbara, less the transit charge. These refunds were made because of the belief, then allegedly adhered to by both plaintiff and defendants, that dried beans and peas were "foodstuffs" which, under applicable tariff provisions, would authorize the transit operation at Santa Barbara. Later, it developed that this belief was erroneous and that the commodities in question were not "foodstuffs" within the definition of that term by the Interstate Commerce Commission.
 Plaintiff's four actions, alleging payment of money under mistake, sought recovery of a portion of the refunds paid to defendants, such portion representing the freight charges from Portland to Castle Crag, California, a point near Dunsmuir in the northern part of the state. As plaintiff points out in its brief, the total charges for the through movement would thus be based on the applicable rates from origin points to Castle Crag, plus the applicable rate from that point to final eastern destinations, plus transit charge. The selection of Castle Crag as a pivotal point may be explained by the fact that the Pacific coast territory for transit privilege purposes has been divided by the transcontinental lines, with the apparent approval of the Interstate Commerce Commission, into three zones: (1) north of Castle Crag; (2) south of Mojave and San Luis Obispo, embracing Santa Barbara, and (3) between Castle Crag and the Mojave-San Luis Obispo line. *357 Transit privileges, in connection with eastbound rates, are available only in that zone which embraces the point of origin.
 Plaintiff's suits were held in abeyance pending a decision by the Interstate Commerce Commission on a complaint filed by the defendants in which it was initially claimed that the charges originally assessed by plaintiff and paid by defendants were applicable; subsequently the complaint was limited to the claim that plaintiff's failure to provide transit at Santa Barbara was unjust, unreasonable and unduly prejudicial and that the rates from the points of origin in Idaho and Washington destined to transcontinental destinations were unjustly and unreasonably high, particularly with respect to the Portland to Castle Crag segment or factor. Both contentions were rejected by the commission, which concluded: "We find that the defendant's (Southern Pacific Company) failure to provide transit service at Santa Barbara on dried beans and peas originating in Idaho and Washington, in connection with transcontinental rates from Portland, is not shown to have been or to be unjust, unreasonable, or unduly prejudicial, and that the assailed rates on this traffic are not shown to have been or to be unjust or unreasonable. The complaint will be dismissed."
 Following the rendition of this decision, defendants answered the complaints on file and denied the existence of any mutual mistake of fact. Shortly thereafter, they moved the court below for summary judgment based on a single affidavit executed by George M. Fish, as an individual defendant in one of the actions and as president of Seaboard Mills, a corporation, a defendant in each of the remaining suits, to which affidavit there was attached an unauthenticated copy of the commission's report and order. A memorandum of authorities accompanied the motion. No counteraffidavit was executed by plaintiff, although it also filed a memorandum of points and authorities in opposition thereto. The trial court granted the motion for summary judgment, setting forth its reasons in a memorandum which has been made part of the record. It adopted the argument of defendants (1) that if the plaintiff made the refunds by mistake, the mistake was one of law and no recovery could be had; and (2) assuming that there was no mistake of law, then the contract was an illegal one and plaintiff could not recover since the courts will not assist any party to an illegal contract.
 Appellant argues herein that it is suing to recover lawful tariff charges which it has the right and the obligation to *358 collect under applicable provisions of the Interstate Commerce Act, regardless of any circumstances that may be involved; and therefore it is immaterial whether the refund to defendants resulted from a mistake of law or pursuant to an illegal contract. Because, contends appellant, the issue here is purely one of law, it additionally requests this appellate court to exercise the powers conferred by section 53, Code of Civil Procedure, and not only reverse the lower court's judgment, but direct the entry of judgment for appellant. Respondents, on the other hand, submit that their uncontroverted affidavit is sufficient to support their judgment.
 With respect to appellant's contentions, it is necessary at the outset to observe, since the point is not once touched upon by appellant, that we are not here confronted with an appeal from a judgment after trial on the merits. To the contrary, the proceeding in the court below was a summary one, authorized and governed by section 437c, Code of Civil Procedure, which insofar as then pertinent read as follows: "In superior courts ... when an answer is filed in any kind of action if it is claimed that the action has no merit, on motion ... supported by affidavit ... the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact."
 [1, 2] "By an unbroken line of decision in this state since the section's original enactment ... the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary law turns" (Walsh v. Walsh, 18 Cal.2d 439, 441 [116 P.2d 62]; Poochigian v. Layne, 120 Cal.App.2d 757, 760 [261 P.2d 738]); hence, a hearing on motion for summary judgment is not a trial on the merits (Luders v. Pummer, 152 Cal.App.2d 276, 279 [313 P.2d 38]; Shea v. Leonis, 29 Cal.App.2d 184, 187 [84 P.2d 277]).
 [3] We first dispose of appellant's contention that it is entitled to an entry of judgment in its favor upon a reversal herein, by reason of the asserted undisputed facts set forth in defendants' affidavit and the applicable law, notwithstanding appellant's failure to file a counteraffidavit on its own behalf. Actually, appellant herein seeks to rely upon respondents' affidavit supporting respondents' motion for summary judgment in the lower court. As section 437c clearly indicates, a complaint may be dismissed or answer stricken "unless the *359 other party, by affidavit or affidavits shall show such facts as may be deemed ... sufficient to present a triable issue of facts." Resort may not be had to the pleadings since "(i)t is not the purpose of the procedure under section 437c to test the sufficiency of the pleadings" (Eagle Oil & Ref. Co. v. Prentice, 19 Cal.2d 553, 560 [122 P.2d 264]). Having failed to file a counteraffidavit in opposition to defendants' motion or a motion for summary judgment and supporting affidavit in its own behalf, appellant is thus limited to defendants' affidavit, and in effect is here asking this court to hold that the requirements of section 437c may be satisfied by its reliance on defendants' motion and affidavit and its failure to present even a supporting affidavit. A similar contention was rejected in Coyne v. Krempels, 36 Cal.2d 257, 262 [223 P.2d 244], when the court said, "So construed, section 437c would be meaningless." To the same effect is Cone v. Union Oil Co., 129 Cal.App.2d 558, 563 [277 P.2d 464]. In the Coyne case, supra, the defendant failed to file an affidavit and futilely argued that the allegations of fact in the affidavit supporting the motion were controverted by the denials in his answer. The situation here seems parallel albeit in reverse. Since a valid answer may not be stricken "unless the other party, by affidavit ... shall show such facts as may be deemed ... sufficient to present a triable issue" (emphasis added), appellant may not prevail even if it be assumed that the respondents' affidavit established beyond peradventure the validity of appellant's claims. Furthermore, the relief here sought by appellant must be "on motion" duly made as provided by section 437c, and no such motion admittedly was ever presented on appellant's behalf. Absent any authority in the applicable statute, unlike the situation in other jurisdictions (48 A.L.R.2d 1188, 1197) we are powerless to enter any judgment against respondents since they are the sole moving parties; additionally, we are likewise not empowered to avail ourselves of the authority granted by section 53, Code of Civil Procedure, summary judgment being a proceeding governed exclusively by the provisions of section 437c.
 [4a] We turn now to respondents' claim that their uncontroverted affidavit is sufficient to support the judgment appealed from. They correctly point out that reference may not be had to the allegations of the complaint in order to ascertain the existence of a triable fact, but that the true nature of the litigation must be ascertained from the allegations contained *360 in the moving affidavit. Here such affidavit was uncontroverted, and the trial court was entitled to accept as true the facts therein stated (Cone v. Union Oil Co., supra, 562). Certain portions therefrom have heretofore been mentioned, and it is respondents' position that the facts therein alleged make it manifest that appellant is not seeking to collect tariff charges but that the complaint is one for money paid by mistake of law. They lay stress on the error arising from the mistaken belief that dried peas and beans were "foodstuffs" within the rules and regulations of the Interstate Commerce Commission and argue that the voluntary payment of money by mistake in connection therewith, or as incidental to payments between shipper and carrier, does not convert an action for recovery of that money into one to enforce payment of shipping charges under the Interstate Commerce Act. A line of decisions, beginning with Michigan Cent. R. Co. v. T. M. Partridge Lumber Co., (8 Cir.) 17 F.2d 657, appears to generally support respondents' position. In the Partridge case, supra, the defendant shipped a carload of cedar poles and paid the plaintiff carrier a sum in excess of the proper charge; later the plaintiff made a refund mistakenly in excess of the proper sum and sued to recover such excess. The court held that the action was not one to recover part of the carrier's charges but a suit on implied contract to refund money paid through mistake. In the recent case of St. Louis- San Francisco Ry. Co. v. Willard Mirror Co., 160 F.Supp. 895 (April 25, 1958), involving a summary judgment proceeding, the court adopted the reasoning of the Partridge case, stating that it was required to follow the appellate decisions of that circuit "regardless of what the trial court might think the law should be in a particular matter." (P. 899.) Respondents point out that the Partridge case has never been overruled or modified, although it has been distinguished in later decisions, both federal and state. Respondents then assert, since appellant cannot recover on the theory that it is suing to collect tariff charges, it likewise cannot prevail on the claim of mistake because such mistake was one of law and not of fact. They cite the following from People v. Kelly, 35 Cal.App.2d 571, 574 [96 P.2d 372]: "A mistake of fact is where a person understands the facts to be other than they are; whereas a mistake of law is where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts." It is argued that appellant knew all the facts in the situation at bar, namely, the identity of the shipper, the identity of the goods *361 and their consignees, except that appellant did not know that the shipments were "foodstuffs" within contemplation of the rules and regulations of the Interstate Commerce Commission. The mistake being assertedly one of law, respondents contend that appellant cannot recover, under the rule or policy of the law against reopening settled transactions where the transferee has made an honest claim and payment has been made without coercion or mistake of fact. (Cooley v. County of Calaveras, 121 Cal. 482 [53 P. 1075].) They cite a Washington decision, Southern Pac. Co. v. Frye & Bruhn, 82 Wash. 9 [143 P. 163], which they contend involves problems practically parallel to the instant situation, where the carrier's claims were rejected. We also take note of the extended argument supporting respondents' claim for an affirmance of the judgment on the alternative theory that the contract sued upon was an illegal one and neither party is entitled to recover. For reasons hereinafter appearing, extended comment on the substance of such argument is deemed unnecessary.
 Opposed to the foregoing points asserted by respondents, appellant has listed an imposing list of authorities, mostly federal cases, dealing almost exclusively with their main contention that a common carrier is obligated and has a right to collect lawful tariff charges under the provisions of the Interstate Commerce Act. It traces the development of case law construing the act, the purpose and intent of Congress in enacting the pertinent legislation and the various refinements which assertedly are now settled and determinative of the problem at hand. Emphasized is the finding of the Interstate Commerce Commission with respect to respondents' complaint and which, it is argued, supports appellant's claim that the tariff charges were and are reasonable and should be paid in full. The case of Michigan Cent. R. Co. v. I. M. Partridge Lumber Co., supra, relied on by respondents, they seek to distinguish; similar efforts are directed to another of respondents' main authorities, Southern Pac. Co. v. Frye & Bruhn, supra. We hesitate to say that these efforts have not been successful, but observe, particularly with respect to the Partridge case, supra, that there are divergent views as to the proper solution of the problem. (See St. Louis-San Francisco v. Willard Mirror, 160 F.Supp. 859, supra.)
 [5] In the last analysis, however, this is a proceeding for summary judgment and we are bound by settled principles to be observed in the application of, and procedure under, section 437c. The procedure has been said to be "drastic and *362 should be used with caution. ..." (Eagle Oil & Ref. Co. v. Prentice, 19 Cal.2d 553, 556 [122 P.2d 264]). Accordingly, if there be any "doubt as to the propriety of the motion, courts should, without hesitancy, deny the same." (Whaley v. Fowler, 152 Cal.App.2d 379, 385 [313 P.2d 97].) [6] Since appellant failed to file an affidavit in opposition, the lower court was entitled to accept as true the facts alleged in respondents' affidavit (Cone v. Union Oil Co., supra, 562), provided such facts are within the affiant's personal knowledge and to which he could competently testify (Coyne v. Krempels, supra, 261-262; Cone v. Union Oil Co., supra, 562). In this latter respect, the crucial portions of section 437c read as follows: "The affidavit ... in support of the motion must contain facts sufficient to entitle ... defendant to a judgment ... and the facts stated therein shall be within the personal knowledge of the affiant and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto" (emphasis added.) [7] Also, the procedure being a drastic one, the affidavit of the moving party must be strictly construed (Eagle Oil & Ref. Co. v. Prentice, supra, 536) and to meet the requirement of "particularity" found in the statute, the movant's affidavit should set forth evidentiary and not ultimate facts. (Murphy v. Kelly, 137 Cal.App.2d 21, 30-31 [289 P.2d 565].)
 [4b] With the foregoing principles in mind, an examination of respondents' affidavit discloses a lack of legitimate compliance with the statute's strict requirements. Thus, there is a claim therein that affiant Fish would be a competent witness, but no showing that he would be. True, he states that he is "one of the defendants" in one of the four actions and "an officer, to wit, the President of the defendant Seaboard Mills," the defendant in the remaining three actions, and that "the facts hereinafter set forth ... are within the personal knowledge of the affiant" and "that affiant, if sworn, can testify competently to such facts. ..." However, there follows a series of averments, many of which could not be within affiant's personal knowledge and hence constitute hearsay, conclusion and opinion; and could not be factual proof required by the statute (Weichman v. Vetri, 100 Cal.App.2d 177, 179 [223 P.2d 288]; Murphy v. Kelly, 137 Cal.App.2d 21, 28 [289 P.2d 565]; Schessler v. Keck, 138 Cal.App.2d 663, 669 [292 P.2d 314]). For example, after reference to the shipments from the points of origin to Santa Barbara, the affidavit states *363 that prior thereto (no date being given) "defendants were informed by the freight agent of the Union Pacific Railroad Company at Nampa, Idaho, then and there acting as the servant, agent and employee of the plaintiff and in the ordinary and regular course of his duties as such agent of plaintiff, that under the rules of the Interstate Commerce Commission ... dried beans, peas and lentils from Idaho and other northwestern points could be shipped at local rates to Portland, Oregon, and that beyond Portland, Oregon, through rates east would apply on beans, peas and lentils stopped in transit in Santa Barbara. ..." The statement that the Union Pacific agent was also the agent for plaintiff was a pure conclusion on affiant's part and, if sworn, affiant could not competently testify that such a relationship existed. Further conclusional in character, and also lacking in particularity, is the declaration attributed to the alleged agent that the shipments in question were subject to transit privileges; thus, it cannot be ascertained when and in what manner the representation was made, and there is no showing that the representation was within the scope of the agent's authority or that affiant could competently testify as to the extent of such authority. The affidavit continues: "... that defendant believed said representation of said agent of plaintiff that defendants were legally entitled to transit privileges ... and affiant is informed and believes, and upon such information and belief alleges, that the said plaintiff at the said time and place and thereafter, until it was otherwise informed by one of its connecting carriers, so believed." Such an averment on its face is hearsay insofar as it seeks to establish the opinion or belief then adhered to by plaintiff. The affidavit then recites: "that at the time said representations were made by plaintiff to defendants as to the lawful tariff charges for the shipments then contemplated, and thereafter made ... and at all times thereafter ... both plaintiff and defendants knew that under the rules and regulations of the said Interstate Commerce Commission, transit charges at Santa Barbara ... were available on 'foodstuffs' and at said time and thereafter during the entire period when said refunds were being made ... both plaintiff and defendants believed that the said beans ... were foodstuffs within the legal definition of the term as the same is used in the rules and regulations of the Interstate Commerce Commission ... that plaintiff and defendants, at a time subsequent to the last of said refunds ... ascertained *364 that their legal conclusion that the said beans ... were 'foodstuffs' was erroneous and they had, in that respect, mistaken the law." The foregoing matter is obviously so replete with conclusions and personal opinions and beliefs as to make it wholly deficient as a basis for a summary judgment. Allegations which follow, and need not be summarized or quoted, also depart from the strict requirements of the statute.
 The cornerstone of respondents' defense was the mistake of law assertedly adhered to by appellant; absent an exposition of any evidentiary facts sufficient to establish the existence of such mistake, there is nothing upon which a summary judgment for respondents on that ground could validly be based. [8] It is well settled that if a party is to prevail on his motion for summary judgment, his supporting affidavit must state facts covering every element necessary to sustain a judgment in his favor (Kimber v. Jones, 122 Cal.App.2d 914, 919 [265 P.2d 922]). This, the respondents have not done by facts to which the affiant could competently testify. In this respect we also point out that the copy of the order of the Interstate Commerce Commission, attached to the affidavit, was neither certified nor authenticated and was therefore incompetent as proof of its contents (Code Civ. Proc., 1905; Low v. Woodward Oil Co., Ltd., 133 Cal.App.2d 116, 122 [283 P.2d 720]).
 [9] The same conclusion must also be reached regarding the alternative finding of the trial court that the contract was an illegal one and recovery thereby barred. While affiant could well have testified, if sworn, to the payment of refunds by appellant, the averment to that effect, standing alone, does not warrant a finding, especially in proceedings of this kind, that appellant had thereby broken the law and was barred from recovery. Before a court can dismiss a complaint under section 437c it must clearly appear that the action is without merit, and every reasonable doubt must be resolved in favor of the pleading (Arnold v. Hibernia S. & L. Soc., 23 Cal.2d 741, 744 [146 P.2d 684]). The specific statute whose mandate has been violated is not referred to, and it cannot be said that the payment of refunds by a carrier, absent an allegation of fraud or collusion, is against public policy or sound morals. Indeed, authority exists that a carrier has a duty, as well as a right, to collect refunds paid by mistake or even by collusion (Gardner v. Rich Mfg. Co., 68 Cal.App.2d 725, 730 [158 P.2d 23]; Butler v. Bell Oil & Ref. Co., 70 Cal.App.2d 728, 730 [161 P.2d 559]). *365
 [10a] As pointed out earlier in this opinion, no affidavit was presented by appellant in opposition to the motion. Upon oral argument, however, appellant indicated that it elected to take advantage of the defects in the moving affidavit if this court should find that the record did not justify a reversal for other reasons. Respondents, on the other hand, orally argued that incompetent evidence, unless objected to, will support a judgment. They further contended that some of the allegations necessarily had to be set forth upon information and belief because they were peculiarly and solely within the knowledge of the appellant. [11] It is the rule in California that in summary judgment proceedings there can be no waiver of the right to object to matter inadmissible by virtue of its incompetency. [12] In Gardenswartz v. Equitable Life Assur. Soc., 23 Cal.App.2d 745, 751 [68 P.2d 322], it is declared: "Under this provision, summary judgment for plaintiff cannot be ordered, even though affidavits for the defendant be insufficient or absent, unless the plaintiff presents affidavits in support of his motion which comply with the section and show that he is entitled to judgment." (Emphasis added.) Cited as support for this conclusion is the Michigan case of MacClure v. Noble, 259 Mich. 601 [244 N.W. 174], where notice of the motion for summary judgment was served on the defendant's attorney and he did not appear. The affidavit having been found to be deficient, the court stated: "The failure of the defendant's attorney to appear and contest the motion was not a waiver of the necessity of plaintiff's compliance with the statute and the rule." The Maryland case of Power v. Allied Asphalt Products Corp., 162 Md. 175 [159 A. 251], involved a similar situation, it thus being claimed that defendant's failure to object to the faulty affidavit waived all errors therein contained. At page 253 the court said: "Referring to the objection last stated, it may be said that the doctrine of waiver has no application to the facts of the case. The plaintiff's right to a judgment under the act must depend not entirely upon the defendant's acts, but upon his own as well. The court in such cases sits in the exercise of a special, limited statutory jurisdiction and, unless he does those things which the act prescribes as essential to jurisdiction under its terms, the plaintiff can claim none of the benefits." [13] The Supreme Court in Coyne v. Krempels, 36 Cal.2d 257, 261 [223 P.2d 244], thus reaffirmed the holding in Gardenswartz v. Equitable Life Assur. Soc., supra: "Summary judgment for plaintiff is proper only if the affidavits in *366 support of his motion state facts that, if proved, would be sufficient to sustain judgment in his favor and defendant does not 'by affidavit or affidavits ... show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.' " To the same effect are Kelliher v. Kelliher, 101 Cal.App.2d 226, 231-232 [225 P.2d 554], and Desny v. Wilder, 46 Cal.2d 715, 725-726 [299 P.2d 257]. [10b] Thus, there first must be a sufficiently supportive affidavit before the defects of any counteraffidavit, either of form or substance, need be examined; and, of course, no distinction is made in the statute as to the status of the moving party, whether plaintiff or defendant. With regard to respondents' claim that this is an instance in which the movant was unable to make a showing except upon information and belief; in order that the court's discretion may properly be exercised, the moving party "should at least present an affidavit by someone who states of his own knowledge that such other persons do know or claim to know the facts and have refused to make affidavits, and such affidavit ought to name the other persons and set forth what each one knows or claims to know ..." (Gardenswartz v. Equitable Life Assur. Soc., supra, 750.) There was no such averment in the instant case.
 For the foregoing reasons, the judgments are reversed and each cause remanded for further proceedings.
 White, P. J., and Fourt, J., concurred.