[Civ. No. 22170. Fourth Dist., Div. One. Sept. 24, 1981.]

CENTRAL MUTUAL INSURANCE COMPANY, Plaintiff,
Cross-defendant and Respondent, v.
DEL MAR BEACH CLUB OWNERS ASSOCIATION, INC.,
Defendant and Appellant;
REBMA CALIFORNIA NINE, INC., et al., Defendants,
Cross-complainants and Appellants;
INSURANCE COMPANY OF NORTH AMERICA et al.,
Defendants, Cross-defendants and Respondents.

918

COUNSEL

Belcher, Henzie, Biegenzahn, Chertok & Walker, William I. Chertok, Uzzell S. Branson III, Scales, Patton, Ellsworth & Corbett, Michael H. Wexler, George C. Lazar and Luke R. Corbett for Defendant and Appellant and for Defendants, Cross-complainants and Appellants.

Clausen, Harris & Campbell, Kenneth H. Clausen and Arthur E. Schwimmer for Plaintiff, Cross-defendant and Respondent.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Thomas E. Sharkey, William R. Warhurst, William T. Fitzgerald, McKay & Byrne, Michael A. Byrne, Stutz, McCormick, Mitchell & Verlasky and Carlye Christianson for Defendants, Cross-defendants and Respondents.

OPINION

**COLOGNE, Acting P. J.**—Five insurance companies[1] (carriers) which had issued comprehensive liability policies to the entities involved in the development of a residential complex are plaintiffs and cross-complainants in this action for declaratory relief. The carriers seek a judicial determination of their liability to defend or indemnify their insureds[2] for any judgments which might be entered against them in an underlying action.[3] After summary judgment was entered in favor of the carriers, the insured contractors and developers, principals in the underlying action, appeal. We address the propriety of the summary judgment in this complex multiparty setting.

In 1970, Imperial and Rebma formed a joint venture known as the Del Mar Venture to acquire certain real property for the purpose of constructing a planned development consisting of over 190 units pursu-

---

[1]Central Mutual Insurance Company (Central Mutual), Insurance Company of North America (INA), Reliance Insurance Company (Reliance), CNA Casualty of California (CNA), and Maryland Casualty Company (Maryland).

[2]Del Mar Beach Club Owners Association, Inc. (Owners Association), Imperial Contracting Co., Inc. (Imperial), a general contractor, San Diego Trust and Savings Bank as the executor of the will of Thomas M. Kelly, deceased (Kelly), Rebma California Nine, Inc. (Rebma), Del Mar Venture (Del Mar Venture), and Gary M. Adcock (Adcock).

[3]The underlying action, *Del Mar Beach Club Owners Assn.* v. *Imperial Contracting Co.* (1981) *ante*, page 898 [176 Cal.Rptr. 886], was appealed after a summary judgment was entered in favor of the defendants following the filing of the fourth amended complaint.

ant to Business and Professions Code section 11003. The residential units overlook the Pacific Ocean in Solana Beach and were sold to the general public. Imperial was to be the general contractor for the development. Kelly[4] and Adcock were the principals and major shareholders in Imperial and were active in their individual capacities in the sale of units to the general public. In the early stages of the project, they were the principal officers in the Owners Association, but as the units were sold they relinquished those positions. Certain other parties partcipated in the development, including Wolfe-Woods as architects, Arevalo & Safino, structural engineers, and Krooskos, soil engineer.

The project included certain common areas such as the tennis courts, a swimming pool, club house and parking areas, which the Del Mar Venture deeded to the Owners Association in the early stages and the association served as the management agent for this property. The owners of the individual units became members of the association and controlled its activities.

The project was completed in three phases, the first two of which were located on the bluff overlooking the ocean and the third of which was constructed on the east side of the property—inland from the bluffs. Units were sold to the general public between 1971 and 1974. In 1975, the Owners Association filed the underlying action against Del Mar Venture and others, in its fourth amended version alleging certain defects in construction of the common areas and certain natural and unnatural soil erosion to the western edge of the property and the bluffs.

During the pendency of this action, on July 1, 1977, Central Mutual brought the within action for declaratory relief to determine whether it had a duty to defend or to indemnify its insureds. The other insurance companies cross-complained for similar declaratory relief on their respective policies.

For various terms during the period of time in question, the following policies had been issued: Central Mutual insured Del Mar Venture, the joint venture consisting of Imperial and Rebma; CNA issued two insurance policies which insured Del Mar Venture, Imperial, Imperial Real Estate Company, Kelly, Gary M. Adcock Real Estate Sales Company;

---

[4]In February 1979, Kelly and his wife died in a plane crash and San Diego Trust and Savings Bank appears here as executor of their estate.

INA issued five insurance policies, some "excess" policies, two of which insured Imperial, Imperial Real Estate Company, Kelly and Gary M. Adcock Real Estate Company, and three of which were policies insuring the Owners Association, and all condominium owners with two of these also covering Del Mar Venture; Reliance insured Imperial, Imperial Real Estate Company, Kelly and Gary M. Adcock Real Estate Sales Company; and Maryland insured Owners Association and Imperial.[5] All of the policies can be described as general comprehensive liability policies. They contain certain exclusions of coverage in various forms for product liability generally, as where there is (1) property damage to products owned, used, or in the care, custody or control of the insured, (2) property damage to premises alienated by the insured, (3) property damage arising out of the work performed or materials furnished by the insured, or (4) property damage from deficiency or mistake in design, plan (etc.) prepared or developed by the insured.[6] The trial court ruled the entire project developed here constituted a "product" and was within the language of the specific exclusions.

At the outset, we summarize the well established rules governing the summary judgment procedure.

"'The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the

---

[5] Mission Insurance Company, which had two umbrella policies, did not join with the other companies in the motion for summary judgment.

[6] Due to a best evidence problem which we discuss *infra*, we do not quote text of the policies. By way of example, however, counsel for INA represent the INA policy numbered GAL129224 is a "Comprehensive General Liability Insurance" policy containing the following exclusions:

A. "Exclusion (i) . . . the insurance coverage does not apply 'to property damage to (1) property owned or occupied by or rented to the Insured, (2) property used by the Insured, or (3) property in the care, custody or control of the Insured or as to which the Insured is, for any purpose, exercising physical control; . . . .'"

B. "Exclusion (j) . . . the insurance does not apply 'to property damage to premises alienated by the Named Insured, arising out of such premises or any part thereof.'"

C. "Exclusion (k) . . . the insurance does not apply 'to property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency in the design, formula, plan, specification, advertising material, or printed instructions prepared or developed by any insured; . . .'"

D. "Exclusion (l) . . . the coverage does not apply 'to property damage to the Named Insured's products arising out of such products or any part thereof.'"

E. "Exclusion (m) . . . the insurance does not apply 'to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.'"

issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor [fn. omitted] and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 . . . .)" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953].)

The substance of Code of Civil Procedure section 437c applicable at the time summary judgment was granted reads as follows: "In superior courts and municipal courts if it is claimed the action has no merit, or that there is no defense to the action, on motion of either party, after notice of the time and place thereof in writing served on the other party at least 10 days before such motion, supported by affidavit of any person or persons having knowledge of the facts, the answer may be stricken out or the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. A judgment so entered is an appealable judgment as in other cases. The word 'action' as used in this section shall be construed to include all types of proceedings. The word 'complaint' as used in this section shall be construed to include a cross-complaint. The phrase 'plaintiff's claim' as used in this section includes a cause of action, asserted by any party, in a cross-complaint. The filing of a motion under this section shall not extend the time within which a party must otherwise file an answer, demurrer, cross-complaint, or motion to strike.

"The affidavit or affidavits in support of the motion must contain facts sufficient to entitle plaintiff or defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affida-

vit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto.

"The affidavit or affidavits in opposition to said motion shall be made by the plaintiff or defendant, or by any other person having knowledge of the facts, and together shall set forth facts showing that the party has a good and substantial defense to the plaintiff's claim (or to a portion thereof) or that a good cause of action exists upon the merits. The facts stated in each affidavit shall be within the personal knowledge of the affiant, shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto. When the party resisting the motion appears in a representative capacity, such as a trustee, guardian, executor, administrator, or receiver, then the affidavit in opposition by such representative may be made upon his information and belief.

"If it appears that such defense applies only to a part of the plaintiff's claim, or that a good cause of action does not exist as to a part of the plaintiff's claim, or that any part of a claim is admitted or any part of a defense is conceded, the court shall, by order, so declare, and the claim or defense shall be deemed established as to so much thereof as is by such order declared and the cause of action may be severed accordingly, and the action may proceed as to the issues remaining between the parties. No judgment shall be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such action, award judgment as established by the proceedings herein provided for. A judgment entered under this section is an appealable judgment as in other cases." In 1980 the Legislature amended the section significantly as we later discuss (see Stats. 1980, ch. 57).

The moving party has the burden of establishing the evidentiary facts of every element necessary to entitle him to a judgment (*Webster* v. *Southern Cal. First Nat. Bank* (1977) 68 Cal.App.3d 407, 417 [137 Cal.Rptr. 293]). Code of Civil Procedure section 437c requires the summary judgment motion must be granted on the basis of facts to which the affiant can competently testify.

▪ The insureds contend the affidavits supporting some of the motions for summary judgment contain inadmissible matter and the judgment lacks evidentiary support because it violates the best evidence rule

(Evid. Code, § 1500).[7] Even though the issue was not raised below, the insureds contend the court did not have before it the best evidence and judgment must be reversed.

*Southern Pacific Co.* v. *Fish* (1958) 166 Cal.App.2d 353, 365 [333 P.2d 133], states the rule in California that in summary judgment proceedings there can be no waiver of the right to object to matter inadmissible by virtue of its incompetency. *Fish* is dispositive of this issue (see also *Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 817-818 [116 Cal.Rptr. 412]). As in *Fish* and *Dugar*, the documents in some of the motions were not originals; thus their consideration by the court was a violation of the best evidence rule and this constituted reversible error. In *Dugar*, the court said: "It is well established that where materials are properly incorporated by reference into an affidavit, they must conform to the rules of evidence. [Citations.] As the court stated in *Miller & Lux, supra,* at page 725, 'The [general] rule is ... that averments in the movant's affidavits which depend upon written documents are incompetent and can not be considered unless there are annexed thereto the original documents or certified or authenticated copies of such instruments, or excuse for nonproduction thereof is shown.' Defendant contends that the trial court's judgment was rendered upon documents which are inadmissible since the documents affixed to plaintiff's motion are photostatic or 'xeroxed' copies of the original invoices." (*Dugar* v. *Happy Tiger Records, Inc., supra,* 41 Cal. App.3d 811, at pp. 815-816.)

This is generally contrary to the rule applicable to evidence offered in a trial which requires the objection to be made below (see § 353).[8] The reason for such a distinction is not clear and we believe the better rule for both a trial and a summary judgment proceeding should be as is stated in section 353. The law in this area is nevertheless well established and we are not inclined to abrogate it.

---

[7]All references are to the Evidence Code unless otherwise specified.

[8]"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:

"(a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and

"(b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

We note that Code of Civil Procedure section 437c was amended in 1980 to add language to provide that evidentiary objections, not raised in writing or orally at the hearing, shall be deemed waived. In enacting this amendment, the Legislature specifically stated the provisions would not apply to any appeal where the notice of appeal was filed prior to January 1, 1981 (see Stats. 1980, ch. 57, § 2). We can only construe this to be a legislative affirmance of the law set out in *Fish* and *Dugar* in those cases where the appeal had a filing date prior to the enactment; and it is a statement of its intent that only appeals filed after January 1, 1981, should have the benefit of the amendment. The notices of appeal here were filed in September 1979, so the 1980 amendment has no application.

Except as otherwise provided by statute, no evidence other than the writing itself is admissible to prove the content of a writing (§ 1500). Secondary evidence, i.e., a copy, is admissible where the original is lost or destroyed (§ 1501), or not reasonably procurable (§ 1502), or under the control of the opponent (§ 1503), or not closely related to the controlling issues and it would be inexpedient to require production (§ 1504) and certain other nonapplicable exceptions. Section 1510 creates another exception and reads as follows: "A copy of a writing is not made inadmissible by the best evidence rule if the writing has been produced at the hearing and made available for inspection by the adverse party."

In reviewing the various affidavits, we find none of the carriers produced the original insurance policy. No affidavit inferred the original had been lost or destroyed, or was otherwise unavailable. The exception authorized by section 1510 might have been available under the affidavit of E. K. Marshman in regard to the policy of Central Mutual, but we were unable to find in the oral proceedings the original was produced at the hearing or made available for inspection. *Dugar* v. *Happy Tiger Records, Inc., supra,* 41 Cal.App.3d 811, at page 816, holds a blank record does not give rise to the inference section 1510 has been complied with or even relied on to make the copies available.

The business records exception (§ 1550) does not appear to be applicable since there was no showing the photostatic copy itself was made and preserved in the course of business and not merely for litigation purposes (*Dugar* v. *Happy Tiger Records, Inc., supra,* 41 Cal.App.3d 811, at p. 816).

Accordingly, we are compelled to hold in each instance the summary judgment must be reversed as lacking proper evidentiary support for the controlling language in the policies.

Recognizing that the motions for summary judgment may be renewed on remand and the matter properly presented to the court, we feel compelled to address the issues more directly for the instruction of the trial court. It may well find the original policies reveal language substantially as contained in the declarations now on file, in which case there may be a basis for at least partial summary judgment. For this purpose we take judicial notice of the opinion issued in *Del Mar Beach Club Owners Assn.* v. *Imperial Contracting Co., supra, ante*, page 898, the underlying action, filed on even date.

In the underlying action, we hold the Owners Association has standing to sue as owner of the common areas and buildings for damage to its property, and in a representative capacity for the individual owners for damage to the use and enjoyment of their respective "air spaces" and related rights. The complaint has been sustained on the cause of action by the Owners Association for both negligence and strict liability. Obviously we cannot state at this time what the nature of the proof will be and many factual issues remain which may preclude summary judgment. If the record reveals the acts result in injury to the property sold by an insured to a particular claimant, the products liability exclusions would apply and the carriers would be free of the duty to defend or indemnify for loss. If, however, the acts proved result in damage to property other than the "product" or to the property of a third party, the products liability exclusions would not apply and the appropriate general liability insurance carrier would be expected to defend and indemnify for any loss.

 The duty to defend arises when an action is brought against an insured, which gives rise to the potential of liability under the policy (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal. Rptr. 104, 419 P.2d 168]). That duty does not dissolve simply because the insured is found liable under facts not giving rise to coverage (*Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 174 [140 Cal. Rptr. 605]).[9]

---

[9]Moreover, though we do not construe particular policy language definitively for purposes of the doctrine of law of the case (because of the evidentiary best evidence problem we have discussed), we approach our analysis keeping in mind rules of construction applicable to insurance policies, including the rules that "any uncertainty or ambiguity must be resolved against the insurer and, if semantically possible, the policy

■ The fourth amended complaint in the underlying action alleges damages which resulted in defects to the tennis court surface, exterior railings and guardrails, pavement, grading, stairwells, garage, door and window sills, and trees. These are all items of damage to property developed by the insureds and sold (alienated) to the Owners Association and thus subject to the exclusion provisions of the policies making coverage inapplicable to the "product," "work" or "premises."

■ A liberal reading of the complaint, however, reveals a claim is also made for damages to Owners Association property not subject to any defect but instead other property affected by the defective product, and also a claim "on behalf of the owners who purchased residential units" for "negligent design, specification, surveying, planning, supervision and/or construction of the ... improvements." These claims present a potential for liability on the insureds which is not subject to the exclusions and for which the insurers should provide a defense under the rule of *Gray v. Zurich Insurance Co., supra,* 65 Cal.2d 263, at pages 276 to 277.

The insurance industry has long recognized a distinction between liabilities arising from warranting the quality of the work performed or product provided which are contractual risks, whether express or implied, and those liabilities arising from the unpredictable losses which are beyond the effective control of the insured and which are not likely to occur frequently or as a normal and inherent consequence of the business operation. In *Silva & Hill Constr. Co. v. Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, at pages 925 to 926 [97 Cal.Rptr. 498], the court quoted with approval a discussion of this concept in the context of the case of *Volf v. Ocean Accident & Guar. Corp.* (1958) 50 Cal.2d 373 [325 P.2d 987], as follows: "'Its effect is to make the manufacturer or contractor stand its own replacement and repair losses while the insurer takes only the risk of injury to other property. For example, suppose in the *Volf* case the contractor had to remove the defective stucco and this could not be done without damaging the structure of the house. The injury to the house would be covered, but the loss caused by having to remove the defective stucco would not be. This distinction is significant. Replacement and repair costs are to some degree within the control of the insured. They can be minimized by careful

must be construed so as to achieve its manifest object of indemnifying the insured against the losses to which the policy relates [citations]" and that "[e]xclusionary clauses must be construed strictly against the insurer and liberally in favor of the insured [citations]." (*Pepper Industries, Inc. v. Home Ins. Co.* (1977) 67 Cal.App.3d 1012, 1018 [134 Cal.Rptr. 904].)

purchasing, inspection of material, quality control and hiring policies. If replacement and repair costs were covered, the incentive to exercise care to or to make repairs at the least possible cost would be lessened since the insurance company would be footing the bill for all scrap. Replacement and repair losses tend to be more frequent than losses through injury to other property, but replacement and repair losses are limited in amount since the greatest loss cannot exceed the cost of total replacement. If the insured will stand these losses, insurance can be provided more cheaply since the company will be freed from administering many small claims for repairs, and it can set a rate for the more unusual risk of injury to property other than the contractor's work or product. This risk can be the hazardous one since there are no natural limitations on the damage the contractor might do to a homeowner's or a neighbor's property.' (13 Stan.L.Rev. pp. 825-826.)"

In *Volf*, we note, the plaintiff seeking coverage under the policy was the general contractor, responsible for both the stucco which was defective and the structure which was not. The Stanford Law Review article's conclusion in the hypothetical case it presents, that the damage to the structure would be covered, is correct since the structure is "other property." The distinction between risks pertaining to the property (excluded) and other property (not excluded), and the resulting liability was explained and applied in *Liberty Bldg. Co.* v. *Royal Indem. Co.* (1960) 177 Cal.App.2d 583, at pages 587 to 588 [2 Cal.Rptr. 329]: "In this connection, Exclusion (f) expressly excludes from liability under the policy, damage sustained by any 'goods or products . . . or premises alienated . . . or work completed . . . *out of which the accident arises.*' (Emphasis added.) This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage

to the walls would not. The principle here applicable is well stated in *Heyward* v. *American Casualty Company of Reading, Pa.*, 129 F.Supp. 4. At page 8 the court said: 'This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to *other property* or *personal injury* arising out of such accident.' In accord are *Volf* v. *Ocean Accident & Guarantee Corp., Ltd.*, 50 Cal.2d 373 . . . ; *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558 . . . ." With this background, it is apparent the insureds would not be covered by these policies on the Owners Association's cause of action for defective design and construction of the club house, pool, tennis court and parking areas, as well as for improper soil erosion protection, because of the language excluding liability for product quality. It appears, however, the insureds would have coverage if the defective design or construction caused damage to other property of the Owners Association as where the failure to provide erosion protection may have caused the damage to other property which is a nondefective product (see *Liberty Bldg. Co.* v. *Royal Indem. Co., supra*, 177 Cal.App.2d 583, 587-588; and see *Burke Concrete Accessories, Inc.* v. *Tolson* (1972) 27 Cal.App.3d 237, 240-242 [103 Cal.Rptr. 513]). Whether the insureds had constructive or proprietary control of any such other property so as to bring the "care, custody or control" exclusion into play is a matter determinable only upon proof of facts pertaining to control and to the particular exclusionary clause language (see *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co., supra*, 19 Cal.App.3d 914, 924-925). Liability cannot be resolved until the facts are made clear at trial.

Similar considerations of the need for proof in the context of the fourth amended complaint's allegations of damages due to defective design preclude a conclusion on this appeal that the "design defect" exclusion[10] applies so as to prevent coverage for the claims of either the Association or the owners.

■ As with the Owners Association, the individual unit owners represented by the association would have a cause of action for damage occasioned by the insureds' acts which affect the use and enjoyment of their airspace and related rights. Such property is not a part of

---

[10]For want of a better description, we use this terminology to refer to the exclusion reading as in footnote 6, paragraph C, above.

the defectively damaged "product" or the "premises alienated." It is apparent the owners of these units may prove damage, by reason of the loss of the easement for ingress and egress, for support or otherwise for loss of use or enjoyment. It is also possible access to parking, as well as use of the pool and grounds, may be affected to their damage. These damages which may differ among the various unit owners are damages to other property not subject to the constructive or proprietary control of the insureds (see *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co., supra*, 19 Cal.App.3d 914, 924-925).

As there are allegations of such damages which would create potential liability not subject to the exclusions, the law requires the carriers to provide a defense. The issue of liability must await more explicit understanding of the facts.

Judgment reversed.

Staniforth, J., and Wiener, J., concurred.